Receipt #062964

ORIGINAL

FILED
JUN 1 2005
U.S. COURT OF FEDERAL CLAIMS

ECF

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WILLIAM L. CENTERS, *Plaintiff,* v. THE UNITED STATES, *Defendant.* | No. 05- 591C |

**COMPLAINT**

1. Plaintiff William L. Centers ("Centers") is a United States citizen.

2. Defendant is the United States of America.

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1491.

4. Centennial Mortgage, Inc. ("Centennial") is a Missouri corporation which maintains its principal place of business in Indiana. Since at least 1986 Centennial has been a mortgagee approved by the United States Department of Housing and Urban Development ("HUD") for participation in HUD mortgage insurance programs in accordance with 24 C.F.R. Part 202.

5. Until August 1, 2000, Centers was the President and sole shareholder of Centennial. At that time, Centers sold all the outstanding stock in Centennial to Matthew T. Kane. Under the terms of the sale, Centennial distributed to Centers, prior to closing, all of its assets and properties including "all chose in action (all rights recoverable by lawsuit by Centennial pertaining to matters arising prior to Closing)." The claim asserted in this action has been adjudicated to be a chose in action assigned to Centers.

6. On January 18, 1989, Centennial entered into a Building Loan Agreement with two parties (the "Developers") to renovate a motel into a residential care facility in Lake County, Indiana (the "Project"). One of the Developers was Miller Beach Limited Partnership ("Miller Beach") and the other was Lake County Trust Company as Trustee for Trust 3788 ("Lake County Trust 3788"). Under the terms of the Building Loan Agreement, Centennial loaned the Developers $2.27 million for construction of the Project (the "Loan"). The Loan was evidenced by a note ("Note") executed by the Developers and endorsed by HUD, which Note was secured by a mortgage/deed of trust ("Mortgage") on the Project.

7. HUD insured the Loan pursuant to Section 232 of the National Housing Act, 12 U.S.C. § 1715w, as evidenced by HUD's endorsement of the Note, and HUD prescribed the form of the Building Loan Agreement, Note, Mortgage and related documents pertaining to the Loan (HUD also assigned the project the following identifier: HUD Project #073-43095 PM WAM SR). HUD's endorsement of the Note created a contract of insurance, as defined in 24 C.F.R. § 207.251, between HUD and Centennial.

8. HUD required the general contractor for the Project to provide $237,760.20, or a letter of credit in lieu thereof, as security against default. Accordingly, on or about August 30, 1989, the general contractor executed a HUD-prescribed Completion Assurance Agreement with Lake County Trust 3788 and Centennial. Because the general contractor was unable to fund the $237,760.20 security or post the letter of credit, David Blumenfeld, the president of Miller Beach ("Blumenfeld"), caused a letter of credit to be issued in the requisite amount (the "Letter of Credit"). The Completion Assurance Agreement authorized Centennial to draw on the Letter of Credit in certain circumstances.

9. The Developers defaulted on the Loan, and Centennial contacted HUD about filing a claim for mortgage insurance benefits. In January 1992, HUD suggested that Centennial draw on the Letter of Credit, and informed Centennial that, in the event of an insurance claim, HUD would deduct the amount secured by the Letter of Credit from the claim.

10. Centennial subsequently filed a mortgage insurance claim with HUD and assigned the Loan to HUD as of July 30, 1992.

11. In July 1992, the general contractor and Blumenfeld filed an Indiana state-court complaint against Centennial, requesting the court to enjoin Centennial from drawing on the Letter of Credit. The trial court denied the injunction.

12. Pursuant to the contract of insurance, specifically 24 C.F.R. § 207.258(b)(iv), the undrawn balance on the letter of credit was either to be retained by Centennial or delivered to HUD in accordance with instructions issued by HUD at the time the insurance claim is filed. Pursuant to HUD's requirements and instructions, Centennial drew $212,105.26 on the Letter of Credit, and HUD reduced its payment on Centennial's insurance claim by this amount.

13. In August 1995, Blumenfeld filed an amended complaint in Indiana state court against Centennial alleging breach of contract and conversion for drawing on the Letter of Credit. Following a trial in February 2000, the jury awarded the plaintiff $120,000, representing a portion of the amount drawn on the Letter of Credit, plus pre-judgment and post-judgment interest. The trial court entered judgment for $193,890 against Centennial.

14. Centennial appealed and the Indiana Court of Appeals affirmed the trial court's judgment on April 3, 2001. Centennial then paid $202,730.33 (the amount of the judgment plus additional accrued interest) to satisfy the judgment.

15. On or about March 8, 2000, Centennial filed a request with HUD to supplement or amend its insurance claim to compensate for the Indiana state court judgment. Centennial also sought reimbursement of its legal fees and expenses of approximately $28,000. HUD denied Centennial's request by letter dated June 7, 2000. Centennial continued requesting payment from HUD from 2000 through 2003. By letters dated June 23, 2003 and December 20, 2003, HUD again denied Centennial's request for a supplemental payment.

16. Pursuant to the contract of insurance, Centennial is entitled to receive the full benefits of the mortgage insurance relating to the Project. HUD has breached its obligations under the contract of insurance by refusing to pay Centennial additional mortgage insurance proceeds to compensate Centennial for the loss that it suffered as a result of incorrectly drawing on the Letter of Credit to cover a portion of its insured loss on the Loan.

17. Pursuant to the contract of insurance, Centennial is also entitled to receive the debenture interest rate on the additional mortgage insurance benefits from the time of payment of the original claim until this suit is resolved.

18. Centennial is also entitled to recover its attorneys fees and expenses in the Indiana state court litigation.

19. Plaintiff, by virtue of the assignment of Centennial's claim to him in conjunction with the sale and reorganization of Centennial, is entitled to bring this action and recover the amounts which Centennial is owed.

WHEREFORE, plaintiff requests this Court to:

A. enter judgment in favor of plaintiff and against defendant for compensatory damages in the amount of $230,000 or such greater amount as may be proven at trial;

B. award plaintiff pre-judgment and post-judgment interest, attorneys fees and costs; and

C. grant plaintiff such other and further relief as justice may require.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Steven D. Gordon
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
Phone: (202) 955-3000
Facsimile: (202) 955-5564

Counsel for Plaintiff

# 2766315_v1