IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM L. CENTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-591C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT AND APPENDIX

Pursuant to the Court's special procedure order and Appendix A, RCFC, the parties respectfully submit this joint status report. Appended to this report are relevant documents. For clarity's sake, the Defendant's position on various issues discussed below is set out before Plaintiff's responsive position.

1. Defendant believes that the Court does not have jurisdiction because the statute of limitations, 28 U.S.C. § 2501, bars this action or, in the alternative, upon the basis that the Court lacks jurisdiction in the absence of a contract between plaintiff, Mr. Centers, and the United States.

Plaintiff believes that the Court has jurisdiction because (1) this action is timely brought under 28 U.S.C. § 2501, and (2) this action involves a claim pursuant to a contract of insurance between the United States Department of Housing and Urban Development ("HUD") and Centennial

Mortgage, Inc. ("Centennial") which claim was assigned to plaintiff – the President and sole shareholder of Centennial – when he sold the stock of Centennial to a third party.

2. The parties are unaware of any basis for consolidation.

3. The parties are unaware of any basis for bifurcation of liability and damages.

4. The parties do not believe that this case should be deferred pending consideration of another case.

5. The parties do not anticipate seeking a remand or suspension.

6. The parties do not anticipate seeking joinder.

7. Defendant proposes to file a dispositive motion pursuant to RCFC 12(b)(1), 21 days after the Court so provides.

8. Defendant believes that the relevant issues are –

(1) Whether the statute of limitations , 28 U.S.C. § 2501, bars this action which accrued in 1993 when HUD paid Centennial $193,890.93. See Brighton Village Assocs. v. United States, 52 F.3d 1056, 1060 (Fed. Cir. 1995) (a claim accrues within the meaning of the statute of limitations "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." ).

(2) Whether Mr. Centers can prove facts to establish the existence of a contract between him the United States, in the absence of which the Court should dismiss this action for lacks of jurisdiction. See Southern California Federal Sav. & Loan Ass'n. v. United States, --- F.3d ----, 2005 WL 2001022 C.A.Fed. 2005 (Aug 22, 2005 ).

(3) Whether the contract of insurance provides Mr. Centers any entitlement to recovery of the money sought. See 24 C.F.R. §§ 207.258(b)(5) & 207.259(b)(iii) (requiring insurance payment be reduced by the total of the funds received by the mortgagee for the account of the mortgagor pursuant to any agreement ).

Defendant believes that the relevant facts are as follows:

Mr. Centers seeks to recover monies allegedly due Centennial under a contract of guarantee.

On January 18, 1989, Centennial entered into a Building Loan Agreement ("Agreement") with two developers ("Developers") to construct a nursing home in Lake County, Indiana (the "Project"). Complaint ("Compl.")., ¶ 6. Centennial's loan to the Developers of $2.27 million was secured by a note (the "Note") and a mortgage (the "Mortgage"). Id.

When the general contractor for this project was unable to post a completion bond, David Blumenfeld, a principal of one of the Developers, posted a letter of credit on the contractor's behalf in the amount of $237,760.20. The mortgagor, Centennial, and the contractor executed a Completion Assurance Agreement ("CAA") specifying the circumstances under which draws could be made against this letter of credit, to which agreement HUD was not a party. Compl., ¶ 6.

HUD insured the Note and Mortgage against default pursuant to Section 232 of the National Housing Act ("Act"), 12 U.S.C. § 1715w.[1] See App. 27.

[1] Under Section 232(f) of the Act, subsections (d), (e), (g), (h), (i), (j,), (k), and (l) of section 207 of the Act, 12 U.S.C. § 1713, also apply to nursing home loans. See 12 U.S.C. § 1715w) (HUD to insure certain mortgages "in accordance with the provisions of this section upon such terms and conditions as [the Secretary] may prescribe") . The terms of the contract of mortgage insurance between Centennial and HUD are set forth in Section 232 of the Act and in HUD's regulations, published at 24 C.F.R. Part 232, Subparts A and B and 24 C.F.R. Part 207. Parts A and B of Title 24 C.F.R. apply to nursing home loans by their terms. Nearly all of 24 C.F.R. Part 207, Subpart B, is made applicable to nursing home loans by 24 C.F.R. § 232.251(a). The regulations in 24 C.F.R. Part 200, Subpart A, are made to apply to nursing home loans by 24 C.F.R. § 232.1. Certain provisions of 24 C.F.R. Part 202 are made applicable to nursing home loans by 24 C.F.R. § 200.10. Contrary to ¶ 7 of the Complaint, HUD's endorsement of a mortgage note insured under Section 232 of the Act creates a "contract of insurance" as defined in 24 C.F.R. § 232.252(a), not as defined in 24 C.F.R. § 207.251.

On December 31, 1991, Centennial advised HUD that the mortgagor had defaulted. Pursuant to its right to elect either to retain the mortgage and acquire the property or to assign the mortgage to HUD, 24 C.F.R. § 207.258(a), Centennial assigned the mortgage to HUD. See App.1; Compl., ¶ 10.[2]

Centennial notified HUD of the Project's default on December 31, 1991, requesting that HUD to "advise" whether it "would prefer that we draw on the letter of credit, or assign it to HUD." App. 1. On January 29, 1992, HUD acknowledged receipt of that election and responded to Centennial's request for advice, as follows: "We suggest you draw on the letter of credit. However, this must be your decision." App. 2.

On July 30, 1992, Centennial assigned this loan to HUD and advised HUD that it would be drawing on the letter of credit. On July 31, 1992, Mr. Blumenfeld sued Centennial to enjoin it from drawing on the letter of credit,

---

[2] When lenders assigns a mortgage to HUD, 24 C.F.R. § 207.258(b)(2)(iv) requires lenders to certify the amount actually due under the mortgage. Lenders are is also required to deliver or retain certain items and rights associated with the mortgage, 24 C.F.R. § 207.258(b)(4) and (5), including "(iii) All funds held by the mortgagee for the account of the mortgagor received pursuant to any other agreement. [and ] (iv) The amount of any undrawn balance under a letter of credit used in lieu of a cash deposit." 24 C.F.R. § 207.258(b)(5). If the mortgagee retains any cash items pursuant to 24 C.F.R. § 207.258(b)(5), the total amount of the cash items retained must be deducted from the amount paid to the mortgagee by HUD. 24 C.F.R. § 207.259(b)(2)(iii).

in which action HUD was not a party. App. 19 . After the trial court denied Blumenfeld's request for injunctive relief, Centennial then purportedly elected to draw on the letter of credit in the amount of $212,105.26. Complaint, ¶ 12. On December 6, 1993, HUD paid Centennial $1,851,095.11 of the $2,158,197.72 Centennial sought under its contract of insurance. App. 3.

On March 13, 2000, the state trial court determined that certain draws made against the letter of credit had been unauthorized by the terms of that agreement and entered a judgment against Centennial in the amount of $193,890.93. After an unsuccessful appeal, Centennial purportedly satisfied this judgment. Complaint, ¶ 14. See Centennial Mortgage, Inc. v. Blunenfeld, 745 N.E. 2d 268 (Ind. App. 2001). On August 1, 2000, Mr. Centers purportedly sold his stock in Centennial, and Centennial purportedly distributed to Centers all "chose in action (all rights recoverable by lawsuit by centennial pertaining to matters arising prior to Closing)." Compl., ¶ 5.

After the sale, Centennial unsuccessfully sought reimbursement from HUD and, when these efforts failed, Mr. Centers urged Centennial to sue HUD. App. 23. When Centennial refused, Mr. Centers sued Centennial

in the United States District Court for the Northern District of Indiana, asking that court to order Centennial to sue HUD. The district court 's judgment dismissing the complaint, was affirmed in part and reversed in part. See Centers v. Centennial Mortgage, Inc., 398 F.3d 930 (7th Cir. 2005). The parties then entered into a stipulated declaratory judgment , to which HUD is not a party. App. 23.

Plaintiff believes that the issues requiring resolution by this Court are:

(1) Whether this action accrued in 1993, as defendant alleges, or instead accrued in 2003 when HUD denied Centennial's request to supplement or amend its insurance claim to compensate for an Indiana state court judgment that became final in 2001. See Terteling v. United States, 334 F.2d 250 (Ct. Cl. 1964).

(2) Whether plaintiff is entitled to pursue the insurance claim assigned to him by Centennial. See Mitchell Canneries, Inc. v. United States, 77 F. Supp. 498 (Ct. Cl. 1948); National Australia Bank v. United States, 54 Fed. Cl. 238 (2002).

(3) Defendant believes that there is an issue as to whether the contract of insurance provides any entitlement to recovery of the money

sought. Plaintiff does not agree that this is an issue but is prepared to respond if defendant raises it.

Plaintiff believes that the relevant facts, which are set forth in the Complaint, are essentially undisputed.

9. Defendant does not believe that settlement is likely or that alternative dispute resolution would be useful, prior to the Court's ruling upon defendant's motion pursuant to Rule 12(b0(1). .

In light of Defendant's position, Plaintiff agrees that a settlement is unlikely and that alternative dispute resolution would not be useful.

10. The parties believe that a trial is unlikely in this case and that a discovery plan is unnecessary. The relevant facts do not appear to be disputed and so the case should be resolved once the Court has ruled upon the various legal issues that Defendant plans to raise by motion.

11. The parties do not anticipate any special issues regarding electronic case management.

12. The parties are unaware of any other information of which the Court should be aware.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ Steven D. Gordon
STEVEN D. GORDON
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
Phone: (202) 955-3000
Facsimile: (202) 955-5564
steven.gordon@hklaw.com
*Counsel for Plaintiff*

DAVID M. COHEN
Director

BRIAN M. SIMKIN,
Assistant Director

/s/John S. Groat
JOHN S. GROAT
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 514-4325/166-8260
Fax: (202) 514-7965
jack.groat@usdoj.gov

Of Counsel;
William Lane
Department of Housing
and Urban Development

Attorneys for Defendant

September 29, 2005

CERTIFICATE OF FILING

I hereby certify that on September 30, 2005, a copy of foregoing "NOTICE OF APPEARANCE was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/ s/John S. Groat

Copies provided to --

The Chambers of Judge Baskir

The Chambers of Judge C. Miller (ADR Judge)