Centennial Mortgage, Inc.

3206 Sugar Maple Business Court, P.O. Box 3159, South Bend, Indiana 46619
Telephone: (219) 233-6773 Fax: (219) 233-6855

/HU

December 31, 1991

Copy to Loan Management

ORIGINAL TO YUJI IWAMOTO, HDF

Mr. J. Nicholas Shelley
Manager
U.S. Department of Housing
and Urban Development
151 North Delaware Street
Indianapolis, IN 46204-2526

Re: Residential Care Facility of Miller Beach
FHA Project No. 073-43095-PM-WAM-SR, Gary, Indiana

Dear Mr. Shelley:

This letter will serve to advise you that the above referenced project is in monetary default as of November 1, 1991. Enclosed are three (3) copies of an Initial Notice of Default indicating our election to assign the mortgage.

Since this project has not achieved final endorsement, there is a letter of credit in the amount of $237,760.00 which was posted for completion assurance collateral in conjunction with HUD form 92450 (copies enclosed). The letter of credit was recently renewed through July 9, 1992. Please advise whether your office would prefer that we draw on the letter of credit, or assign it to HUD.

It is our intention to begin the assignment process within the next ten (10) days. Please feel free to call me if you have any questions after reviewing the enclosed report.

Sincerely,

Sandra Lake

Sandra Lake
Manager of Legal Services

SL/mbl

Enclosures

SENT VIA UPS OVERNIGHT DELIVERY NO. 1183 0702 832

cc: Mr. Donald M. Kaplan (SENT UPS NO. 1183 0702 841 WITH DCR D015 0636 916)

JAN 29 1992

U.S. Department of Housing and Urban Development

Indianapolis Office, Region V
151 North Delaware Street
Indianapolis, Indiana 46204-2526

JAN 27 1992

Mr. Daniel Brewer
Vice President
Centennial Mortgage, Inc.
3206 Sugar Maple Business Court
South Bend, Indiana 46619

RE: Residential Care Facility of Miller Beach
FHA Project No. 073-43095-PM-WAM-SR, Gary, Indiana

Dear Mr. Brewer:

This is to acknowledge receipt of your letter declaring Miller Beach to be in default on the above referenced loan.

We suggest you draw on the letter of credit. However, this must be your decision. Please be advised that in the event of an insurance claim to FHA, HUD will deduct the $237,700 secured by the letter of credit from your claim.

Sincerely,

J. Nicholas Shelley
Manager, 5.7S

cc: HFMMN Courtright 6246
HFMMAA Chuba 6251
HFMMAB Rodgers 6251
5.7s Indianapolis, IN
HFMMC Zimmerman 6254
HFMMCA Official 6254
HFMMCA Chron 6254
HFMMCB Elliott 6250

HFMMCB:ELLIOTT:pdl 11-22-93:DiskRita(Miller Beach)

Ms. Sandra Lake
Manager of Legal Services
Centennial Mortgage Inc.
3206 Sugar Maple Business Court
P.O. Box 3159
South Bend, IN 46619

DEC 6 1993

Dear Ms. Lake:

SUBJECT: Project No. 073-43095
Miller Beach
Gary, IN

The examination of the claim for insurance benefits has been completed and we are proceeding with final settlement. Claim settlement data has been forwarded to the Department of the Treasury for issuance of payment as indicated on the enclosed Mortgage Insurance Claim Settlement Statement (Form HUD-27427).

Your claim, filed in the amount of $2,136,615.74, has been settled in the amount of $1,851,095.11, a net decrease of $285,520.63.

The decrease is a result of reclassification of the Schedule A accounts to comply with the amortization of the loan as of July 1, 1990. The mortgagee did not amortize the mortgage beginning July 1, 1990. This resulted in HUD adjusting the payment schedule and thereby the date of default. The results are as follows:

| | Mortgagee's Claim | HUD's Reclass | Adjustments |
|---|---|---|---|
| UPB | $ 2,158,197.72 | $ 2,146,470.55 | $ (11,727.17) |
| 1% deduction | (21,581.98) | (21,464.71) | 117.27 |
| Reserve for Replacement | 0.00 | (42,282.50) | (42,282.50) |
| Unapplied Funds | 0.00 | (19,522.97) | (19,522.97) |
| Assurance of completion | 0.00 | (212,105.26) | (212,105.26) |
| | $ 2,136,615.74 | $ 1,851,095.11 | $(285,520.63) |

In addition mechanic's liens in the amount to $112,870.68 have been deducted from the claim.

Interest has been curtailed to September 30, 1991, the date by which the Notice of Default should have been filed based on the correct default date.

If additional documentation is available to support the deductions, you may file a supplemental claim.

A Certificate of Claim is also enclosed.

Very sincerely yours,

Gary G. Zimmerman
Chief
Multifamily Claims Branch

Enclosure

TGAGE INSURANCE CLAIM
TLEMENT STATEMENT and VOUCHER
TIFAMILY HOUSING

U S DEPARTMENT OF HOUSING AND
URBAN DEVELOPEMENT
OFFICE OF FINANCE and ACCOUNTING

| | | | | |
|---|---|---|---|---|
| NO.<br>-43095 | VOUCHER NO.<br>7757A | REQUISITION NO | SCHEDULE NO<br>9038 | |
| E LAST PMT<br>01/91 | EFFECTIVE DA<br>08/01/91 | MATURITY DATE | SERIES | INTEREST RATE<br>0.0937500 |
| E OF CONVEYANCE | DATE ASSIGNE<br>07/30/92 | SETTLEMENT DATE<br>11/16/93 | SECTION<br>232 | FUND<br>GI |

JECT NAME AND LOCATION
LER BEACH
5 Melton Rd
y, IN 46403

MORTGAGEE NAME AND LOCATION
CENTENNIAL MORTGAGE INC
3206 SUGAR MAPLE BUSINESS COURT
SOUTH BEND, IN. 46628

| | | | |
|---|---|---|---|
| Section I | | | |
| Gross Claim<br>Jnpaid principal balance of the mortgage | | | $2,146,470.55 |
| Jnpaid balance of advances by mortgagee for:<br>.Mortgage insurance premiums | | $0.00 | |
| .Taxes ground rents,water rates,etc. | | $0.00 | |
| .Insurance on the property | | $0.00 | $0.00 |
| Reasonable expences for completion and preservation f the property | | | $0.00 |
| Jndisbursed mortgage proceeds remitted to FHA | | | $0.00 |
| tal Mortgage Balance and Disbursements | | | $2,146,470.55 |
| ductions | | | |
| Funds in Escrow:<br>.Mortgage Insurance premiums | | $0.00 | |
| .Taxes ground rents,water rates,etc. | | $0.00 | |
| .Hazard Insurance premiums | | | |
| .Reserve for replacements | | $42,282.50 | |
| .Other | ASSURANCE OF COMPLETION ESCRO | $212,105.26 | $254,387.76 |
| Net income received from the property:<br>1.Total colections(Schedule B) | | $0.00 | |
| 2.Less:Operating expenses(Schedule C) | | $0.00 | $0.00 |
| Receipts from other sources after default date | | $19,522.97 | $19,522.97 |
| One percentum of Item a. above | | | $21,464.71 |
| .Other | | | $0.00 |
| | Total Deductions | | $295,375.44 |
| t Claim | | | $1,851,095.11 |
| us interest on $ from 08/01/91 to 09/30/91<br>$1,510,700.00 | @ | 0.09375 | 23091.54 |
| us interest on $ from 08/01/91 to 09/30/91<br>$340,350.00 | @ | 0.09375 | 5202.36 |
| ss interest on $ from to<br>$0.00 | @ | 0.00000 | |
| JUSTED CLAIM | | | $1,879,389.01 |
| ess partial settlement | | | $1,617,690.81 |
| SS :OFFSET-PROJECT NO. | MECHANIC'S LEINS | | $112,870.68 |
| ebentures | | | $0.00 |
| ash | | | $148,827.52 |
| ection II | Certificate of Claim | | |
| .Amount due under the mortgage but not included or insurance benefits | | | $0.00 |
| .Reasonable attorney's fees paid | | | $0.00 |
| .Interest adjustment:<br>ortgage interest @ 0.10750 from 07/01/91 to 09/30/91 | | 57528.35 | |
| ess debenture interest equivalent 0.09375 from 08/01/91 to 09/30/91 | | 28293.9 | |
| ess debenture int @ 0.00000 | | | 29234.45 |
| nount deducted under item h of section I | | | $21,464.71 |
| ERTIFICATE OF CLAIM | DATE 7/30/92 | | AMOUNT $50,699.16 |

Kroth & Altman LLP
1850 M Street, N.W., Washington, D.C. 20036-5803

Telephone: (202) 293-8200 Telecopier: (202) 872-0145
(202) 775-5872

RECEIVED
AUG 1 1 2003
BY:

August 6, 2003

BY HAND DELIVERY

John Daly, Esq.
Office of General Counsel
U.S. Department of Housing and
Urban Development
451 Seventh Street, S.W.
Room 9230
Washington, D.C. 20410

Re: Miller Beach, Gary, IN, FHA Project No. 073-43095; and
Northview Villa, Omaha, NE, FHA Project No. 103-43038

Dear Mr. Daly:

We are writing on behalf of our client, Centennial Mortgage, Inc. ("Centennial"), with respect to its mortgage insurance claims relating to the above-referenced projects. FHA has paid each of the insurance claims, but has surcharged both of them. Centennial has previously requested FHA's reconsideration of the surcharges.

Centennial's prior owner, Mr. William Centers, retains an interest in some of the proceeds of these two insurance claims (since the challenged surcharges occurred while he was the owner of Centennial). He is insisting that Centennial initiate legal action against the Department of Housing and Urban Development ("HUD") in connection with these claims, and is alleging that Centennial is contractually obligated to him to do so. Given that these insurance claims were made several years ago, Mr. Centers has expressed an unwillingness to permit any further delays in their resolution and payment. Accordingly, we are respectfully requesting an in-person meeting with you at your earliest convenience to discuss the final resolution of these claims.

Perhaps a brief history of these two claims may be helpful to you:

The Miller Beach project. Centennial properly and timely filed its original mortgage insurance claim in 1992 upon the mortgagor's monetary default. HUD surcharged the mortgage insurance benefits in an amount equal to the balance of the Assurance of Completion Escrow letter of credit, $212,105.26, that Centennial was then holding. HUD had required Centennial to

draw the Assurance Completion Escrow letter of credit in accordance with HUD's instructions, and HUD reduced the insurance claim by that amount after Centennial was successful in defending against the project sponsor's action seeking an order restraining Centennial from so drawing on the escrow. Thereafter, the project's sponsor, who had posted the Assurance Completion Escrow letter of credit, continued his action in state court against Centennial claiming that Centennial was unauthorized to draw upon the Assurance of Completion Escrow letter of credit since no default had occurred under the HUD form of Construction Contract. While Centennial vigorously defended this action, including its appeal to the Court of Appeals of Indiana, final judgment was entered against Centennial in the amount of $202,730.23. Centennial satisfied that judgment and filed its request with HUD on or about March 8, 2000 to amend the insurance claim so as to accommodate the Court's judgment.

After judgment was entered and satisfied, Centennial discovered that during the litigation, viz., on or about August 29, 1997, HUD sold the previously-insured Miller Beach mortgage note in an FHA Multifamily Note Sale to the project's prior owner, Miller Beach Ltd. Partnership, the successful bidder. We understand that prior to the Multifamily Note Sale, HUD held a miscellaneous escrow account in the amount of $212,105.26 for the project; that escrow representing the amount of the surcharge made in Centennial's insurance claim for the Completion Assurance Escrow balance. As HUD has advised us, upon the note sale, that escrow account was used to pay past due property taxes, which benefited Miller Beach, with the remaining balance transferred or credited to Miller Beach at the sale. As such, Miller Beach has apparently recouped the Assurance Completion Escrow letter of credit proceeds twice – once through HUD and once through the judgment in favor of its sponsor and to the detriment of Centennial. Centennial is more than willing to cooperate with HUD in seeking recoupment of these amounts from Miller Beach and/or the sponsor.

Clearly, under any legal or equitable theory Centennial should not have to absorb this loss. Under the contract of mortgage insurance, these amounts would not have been surcharged under the original claim had Centennial not drawn on the letter of credit as required by HUD. HUD, therefore, should have approved Centennial's request to increase its claim by the amount of the surcharge. However, by letter dated June 23, 2003 (over three years after the initial request was made), HUD has summarily denied the claim. Apparently, HUD's position is that Centennial had some type of unspecified "responsibility" (with no citations or support for that proposition) to advise HUD of the litigation when it was commenced, and that its failure to do so resulted in Centennial's assumption of the responsibility for the outcome of the litigation. We are not aware of any such notification obligation and completely disagree. From the outset, it appears that HUD was aware the litigation was initiated. In addition, only HUD has the requisite standing to recoup what appear to be double payments to Miller Beach and the sponsor. And the payment of mortgage insurance benefits by HUD should not allocate the risk of loss in litigation to the mortgagee, particularly when the claims at issue specifically involved HUD-promulgated loan forms and procedures. Rather, HUD is obligated to pay the insurance claim as adjusted by the inclusion of the erroneous surcharge.

The Northview Villa project. Centennial assigned the loan to HUD on or about October 23, 1993 and, thereafter, timely filed its application for insurance benefits. At that time, there were apparently $105,000.00 in mechanic's liens reflected on the Title Policy. Centennial's experience with HUD was that the existence of these mechanic's liens (which were ultimately removed at the foreclosure sale) would not in any manner adversely affect HUD's acceptance of Centennial's insurance claim. However, on October 23, 1995, HUD advised Centennial for the first time that its insurance claim would be curtailed by $81,000 (representing a loss of interest due to a reduction of the interest period) because "the legal requirements for the issuance of insurance benefits were completed on January 3, 1994, which was not within the forty five day period." Centennial has been asking HUD for several years to adjust its claim by the $81,000 that was curtailed, since it is Centennial's position that the legal requirements had been satisfied on a timely basis, and that the mere existence of those mechanic's liens did not provide a basis for a surcharge of the claim. We wrote to HUD on Centennial's behalf on numerous occasions over the past eight years. To date, Centennial has still not received a final determination on its claim. Once again, Centennial's former owner, Mr. Centers, has demanded that Centennial file legal action to recoup this amount.

We believe a meeting between Centennial's present ownership, its undersigned transactional and litigation counsel and HUD's representatives is necessary to avoid the litigation sought by Centennial's prior owner. We suggest meeting at your earliest convenience at either your office or ours during the week of August 25, 2003 or the week of September 3, 2003.

We appreciate your prompt attention to this matter and hope you will contact one of us shortly to arrange such a meeting.

Very truly yours,

KROOTH & ALTMAN LLP

David A. Barsky

Bonnie Hochman Rothell

cc: Mr. Matthew Kane
Ms. Beverly Miller
Gregory J. Bolton, Esq.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-0500

OFFICE OF GENERAL COUNSEL

December 20, 2003

David Barsky, Esq.
Krooth & Altman
1850 M Street, N.W.
Washington, DC 20036

Re: Mortgage Insurance Claims
Miller Beach, FHA # 073-43095
Northview Villa, FHA # 103-43038

Dear Mr. Barsky:

Thank you for meeting with us on October 16, 2003. This letter responds to issues raised in that meeting and in your August 6, 2003 letter regarding the mortgage insurance claims submitted by your client, Centennial Mortgage, Inc. ("Centennial"), on two multifamily loans involving Miller Beach and Northview Villa.

Miller Beach. Centennial assigned the Miller Beach loan to HUD and filed its mortgage insurance claim in 1992. As part of the settlement process, Centennial drew down the balance of an assurance of completion escrow letter of credit posted by David Blumenfeld, the project sponsor. This procedure was in accordance with HUD's regulations and administrative requirements. The regulations at 24 CFR 207.258(b)(5) (4-1-92 Edition) provide that, "[t]he following cash items shall either be retained by the mortgagee or delivered in accordance with instructions to be issued at the time the insurance claim is filed...(iv) The amount of any undrawn balance under a letter of credit used in lieu of a cash deposit." The regulations further provide at 24 CFR 207.259(b)(iii) that the amount of the insurance payment shall be reduced by "[t]he sum of the cash items retained by the mortgagee, pursuant to §207.258(b)(5)...." Similar provisions are included in HUD's "Instructions for Applications for Insurance Benefits – Multifamily Mortgages" which set forth the fiscal requirements for claims for multifamily mortgage insurance benefits. Accordingly, HUD surcharged the claim $212,105.26, an amount equal to the balance of the letter of credit.

Blumenfeld, the project sponsor, filed a state court action in July 1992 seeking a temporary restraining order blocking Centennial from drawing on the letter of credit, but the TRO request was denied. Three years later, in 1995, Blumenfeld filed an amended complaint in Indiana state court claiming that Centennial was not authorized to draw on the letter of credit. In February 2000, the jury awarded Blumenfeld $120,000, representing a portion of the letter of credit amount, plus pre-judgment and post-judgment interest. Centennial appealed this judgment, lost the appeal in May 2001, and paid $202,730.23 as final settlement of the judgment. Centennial has now requested HUD to make a supplemental payment on its mortgage insurance claim.

HUD no longer has the funds that Centennial is seeking. At the time HUD settled the claim with Centennial in 1992, HUD created and funded a miscellaneous escrow account for the benefit of the project in the amount of $212,105.26. This represented the amount HUD had surcharged Centennial on its claim for the letter of credit balance, which Centennial retained. It is HUD's normal practice to create and fund such an escrow account when the mortgagee retains a cash item as part of the claim settlement. When HUD sold the Miller Beach loan in 1997, HUD advanced funds from this escrow account to pay property taxes on the project and transferred the balance of the escrow account to the loan purchaser. HUD suffered a substantial loss on the sale of the loan and no longer has the funds in the escrow account. Although the purchaser of the loan was in fact the project owner, under the terms of the loan sale HUD would have transferred the escrow account to whoever purchased the loan. HUD made no special accommodation for the project owner.

You noted in our meeting and in your letter that the project owner arguably recouped the letter of credit proceeds twice – once through the judgment against Centennial and again through its subsequent purchase of the loan from HUD. As you mentioned, however, the loan was sold to the project owner, but the state court judgment was entered in favor of the project sponsor. In addition, the project sponsor paid the issuer to issue the letter of credit. As a result, it is not clear whether the same party benefited twice. If Centennial believes that these facts form a basis for an equitable claim for unjust enrichment, then Centennial, not HUD, should bring such a claim against the owner or the project sponsor.

HUD did not have notice of the Indiana litigation. Although you indicated that HUD might have been aware of the initial action by the project sponsor seeking the temporary restraining order in 1992, there is no evidence that HUD was aware that the sponsor filed an amended complaint in 1995. Centennial's Indiana counsel apparently did not notify HUD of the litigation at any time from 1995 to 2000 and did not join HUD as a third party defendant in the action. As a result, HUD had no opportunity in the Indiana litigation to explain its claim settlement procedures or to make any argument that the decision to draw down the balance of the letter of credit was proper under the terms of the loan closing documents. As you mentioned in our meeting, Centennial's Indiana counsel no longer has any files concerning this matter so it is not possible for HUD to determine whether the interests of Centennial (or HUD) were adequately represented in that litigation.

For these reasons, we concur in the decision of the Office of Multifamily Housing, as set forth in the June 23, 2003 from Beverly Miller, denying Centennial's request for a supplemental claim on the Miller Beach loan.

Northview Villa. Centennial assigned the Northview Villa loan to HUD on October 25, 1993 and filed its mortgage insurance claim. In accordance with HUD's regulations and administrative requirements, Centennial was required, within 45 days after assignment, to provide HUD with a title policy endorsement showing that HUD held a primary security interest in the asset. Pursuant to 24 C.F.R. § 207.258(b)(2)(iii), a mortgagee assigning a mortgage to HUD in exchange for insurance benefits must warrant that the mortgage is "prior to all liens and encumbrances" which may have attached subsequent to the recording of the mortgage "except such liens . . . as may be approved by the Commissioner." As you acknowledged, the title policy endorsement from Dakota Title & Escrow Company submitted by Centennial on the Northview Villa claim revealed construction liens superior to HUD's mortgage. Since Centennial did not

supply a lien-free title policy endorsement within 45-days after assignment, the interest on the claim was curtailed as of December 9, 1993, the last day of the 45-day period.

You indicated in our meeting that, when Centennial filed the claim, it asked HUD to deduct the amount of the outstanding construction liens from the claim and to process the claim for the balance of the claim amount. You further indicated that Centennial did not receive a response to this request. Gregory Bolton, the staff attorney who handled the claim, recalls that he did inform Centennial that HUD could not agree to this procedure inasmuch as it was no longer HUD's practice at that time. Thus, Centennial should have known that it needed to remove the mechanic's liens in order to provide a satisfactory title policy endorsement. Centennial had filed other claims with HUD and should have been familiar with HUD's claim process, including the requirement that interest on the claim would be curtailed if all the legal documents (including a satisfactory title policy endorsement) were not submitted to HUD within 45 days after assignment of the mortgage.

After our meeting, you provided us with a copy of a letter from Mr. Bolton to Centennial dated October 23, 1995 which stated that the legal requirements for the issuance of insurance benefits were completed on January 3, 1994. We are not aware of the exact reasons why Centennial did not receive this legal clearance letter at an earlier date. HUD's Office of Finance and Accounting paid a final settlement of the claim on November 30, 1995, and a supplemental claim on January 30, 1996. It appears that the delay in issuing the legal clearance letter may have resulted in a delay in processing the final settlement. Therefore, we will advise the Multifamily Claims Branch to adjust the interest curtailment to allow interest on the claim (at the debenture rate of 8.5%) from the date the legal requirements were met (January 3, 1994) until the date of final settlement (November 30, 1995).

Please contact Michael Collotta at (202) 708-4090 if you have any questions about this reply.

Sincerely,

John J. Daly
Associate General Counsel
Insured Housing

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WILLIAM L. CENTERS,<br><br>Plaintiff,<br><br>v.<br><br>CENTENNIAL MORTGAGE, INC. and MATTHEW T. KANE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. ______________ |

COMPLAINT FOR DECLARATORY JUDGMENT AND MANDATORY INJUNCTION

The Plaintiff, William L. Centers ("Centers"), for his Complaint for Declaratory Judgment and Mandatory Injunction against the Defendants, Centennial Mortgage, Inc. ("Centennial") and Mathew T. Kane ("Kane"), states as follows:

PARTIES, JURISDICTION AND VENUE

1. Centers is a citizen of Nevada. He resides in Las Vegas, Clark County, Nevada.

2. Centennial is a Missouri corporation which maintains its principal place of business in South Bend, St. Joseph County, Indiana.

3. Kane is a citizen of Indiana. He resides in Granger, St. Joseph County, Indiana. Kane is the president of Centennial.

4. Jurisdiction exists under 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5. Venue is appropriate in the Northern District of Indiana under 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

FACTUAL BACKGROUND

Stock Purchase Agreement

6. On August 1, 2000, Centers and Kane executed a Stock Purchase Agreement. *See* **Exhibit 1.**

7. Under the Stock Purchase Agreement, Centers sold to Kane all the outstanding shares of Centennial's capital stock. *See id.* at ¶ 1.

8. Under the Stock Purchase Agreement, Centers received "all of the assets and properties" of Centennial. *Id.* at ¶ 5(A). Included among these assets and properties, Centers received "all chose in action (all rights recoverable by lawsuit by [Centennial] pertaining to matters arising prior to Closing)." *Id.*

Assignment Agreement

9. On August 1, 2000, Centers and Centennial Mortgage executed a Bill of Sale and Assignment and Assumption Agreement ("Assignment Agreement"). *See* **Exhibit 2.** In this Complaint, the Stock Purchase Agreement and the Assignment Agreement are collectively referred to as the "Agreements."

10. Under the Assignment Agreement, Centennial "hereby sells, transfers, assigns and conveys to Centers all of [Centennial's] rights, title, and interest in and to all of the assets and properties of Centenial . . ." *Id.*

11. The assets and properties that Centennial sold to Centers included "all chose in action (all rights recoverable by lawsuit by [Centennial] pertaining to matters arising prior to Closing)." *Id.*

12. Centennial "covenanted" with Centers "that [Centennial] and its legal representatives, successors and assigns will do, execute and deliver, or will cause to be done, executed and delivered, all such further acts, transfers, assignments, conveyances, powers of attorney and assurances, for the better assuring, conveying and confirming unto Centers all and singular of [Centennial's] entire rights, title and interest in and to" Centennial's assets and properties. *Id.*

HUD Action

13. On January 18, 1989, Centennial entered into a Building Loan Agreement with two parties, one of which was Miller Beach Limited Partnership ("Miller Beach"), to renovate a motel into a residential care facility in Lake County, Indiana. *See* **Exhibit 3**. These two parties are collectively referred to as the "Developers." Under this arrangement, Centennial loaned the Developers $2.27 million, and the Developers granted Centennial a mortgage on the property.

14. The Department of Housing and Urban Development ("HUD") insured Centennial's loan to the Developers. HUD, therefore, supplied the forms for the contractual documents.

15. HUD required the general contractor to provide $237,760.20 as security against any default. Accordingly, the general contractor executed a Completion Assurance Agreement with the Developers and Centennial. *See* **Exhibit 4**. As the general contractor was unable to provide this sum, David Blumenfeld, the president of Miller Beach, personally supplied the funds through an irrevocable letter of credit (the "Letter of Credit"). The Completion Assurance Agreement authorized Centennial to draw on the Letter of Credit in certain circumstances.

16. The Developers defaulted on Centennial's loan, and Centennial filed a claim with HUD for insurance benefits. On January 27, 1992, HUD instructed Centennial to draw on the

Letter of Credit, and informed Centennial that it would reduce the proceeds of any insurance claim by that amount.

17. On July 31, 1992, the general contractor and Blumenfeld filed a complaint against Centennial in Superior Court in St. Joseph County, Indiana, requesting the court to enjoin Centennial from drawing on the Letter of Credit, under the terms of the Completion Assurance Agreement. The trial court denied the requested injunction.

18. Accordingly, Centennial drew $212,105.26 on the Letter of Credit. HUD reduced its payment on Centennial's insurance claim by this amount.

19. In 1997, HUD sold the mortgage note to Miller Beach. HUD advanced a portion of the $212,105.26 to pay property taxes and transferred the balance of the funds to Miller Beach.

20. Meanwhile, on August 16, 1995, Blumenfeld filed an amended complaint against Centennial alleging breach of contract and conversion. Following a jury trial in February 2000, the court entered a judgment against Centennial in the amount of $193,890. This judgment was affirmed on appeal. Accordingly, Centennial paid $202,730.23 (the judgment plus accrued interest) to the Clerk of the St. Joseph Superior Court.

21. Based on these rulings, Centennial requested that HUD recalculate Centennial's claim for insurance benefits to include $202,730.23, plus Centennial's attorney's fees and other expenses, which totaled approximately $28,000. HUD denied Centennial's request by letter dated June 7, 2000.

22. Centennial continued requesting payment from HUD from 2000 through 2003. By letters dated June 23, 2003 and December 20, 2003, HUD denied Centennial's claim. *See* **Exhibits 5 & 6.**

23. In its December 23, 2003 letter, HUD informed Centennial that, "If Centennial believes that these facts form a basis for an equitable claim for unjust enrichment [against the Developers], then Centennial, not HUD, should bring such a claim against the [Developers]." **Exhibit** 6.

24. Centennial is entitled to challenge HUD's decision and continue its efforts to obtain payment for the judgment and related expenses from HUD, or, as HUD suggested, the Developers. These efforts must be prosecuted in Centennial's name. Centennial and Kane, however, have refused to take any further actions to recoup Centennial's losses, or to cooperate with Centers in asserting this claim.

**COUNT I (DECLARATORY JUDGMENT)**

25. Centers incorporates by reference ¶¶ 1-24.

26. Under the Agreements, the Defendants sold to Centers all the rights in their choses of action.

27. Under the Assignment Agreement, Centennial -- and Kane as its president -- are required to perform all acts necessary to deliver and assure Centers' rights in the choses of action which Centers purchased from the Defendants.

28. The HUD Action is a chose of action under the Agreements.

29. There exists an actual, justiciable controversy between Centers and the Defendants involving their respective rights and obligations arising under the Agreements, which controversy should be resolved by a declaration of this Court.

30. Centers and the Defendants have a substantial and present interest in the subject matter of this controversy.

31. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

THEREFORE, Centers requests this Court to issue a declaratory judgment that (1) the HUD Action is a chose of action under the Agreements; (2) the Defendants are contractually required to cooperate with Centers and to perform those acts necessary to enable Centers to enforce his rights in the HUD Action; and (3) any legal counsel retained by Centers to exercise his rights through the HUD Action are subject to the direction of Centers, and not the Defendants, in pursuing Centers' rights.

**COUNT II (MANDATORY INJUNCTION)**

32. Centers incorporates by reference ¶¶ 1-32.

33. Under the Agreements, the Defendants sold to Centers all the rights in their choses of action.

34. Under the Assignment Agreement, Centennial -- and Kane as its president -- are required to perform all acts necessary to deliver and assure Centers' rights in the choses of action which Centers purchased from Centennial.

35. The HUD Action is a chose of action under the Agreements.

36. Centers will suffer immediate and irreparable injury, loss, and damage if a mandatory injunction is not entered.

THEREFORE, Centers requests this Court to issue a mandatory injunction requiring the Defendants to cooperate with Centers and perform those acts necessary to enable Centers to enforce his rights in the HUD Action.

Respectfully submitted,

/s/ Timothy J. Abeska

Timothy J. Abeska (3998-71)
Jesse M. Barrett (23811-71)
BARNES & THORNBURG
600 1st Source Bank Center
100 North Michigan
South Bend, Indiana 46601
Telephone: (574) 233-1171

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WILLIAM L. CENTERS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 3:04cv0153 AS |
| | ) | |
| CENTENNIAL MORTGAGE INC., | ) | |
| and MATTHEW T. KANE, | ) | |
| | ) | |
| Defendants | ) | |

*MEMORANDUM AND ORDER*

On February 20, 2004, this plaintiff, William L. Centers, filed a complaint for declaratory judgment and mandatory injunction. The defendants filed a motion to dismiss and memorandum on March 15, 2004, and the defendants filed a response on April 1, 2004, and the plaintiff a reply on April 16, 2004. Oral argument was heard in open court on May 28, 2004 in South Bend, Indiana. The case has been ably argued and briefed.

A good deal of the relevant background in this case can be found in *Centennial Mortgage, Inc. v. Blumenfeld*, 745 N.E. 2d 268 (Ind. App. 2001). Also highly relevant here are the provisions of 31 U.S.C. §3727. Certainly, it goes without saying that mandatory injunctions are not favored. *Dible v. City of Lafayette*, 713 N.E. 2d 269 (Ind. 1999). Certainly, this Court can and does make a facial examination of the contract in question which is attached to the complaint in this case. *Graham v. Medical Mutual of Ohio*, 130 F.3d 293 (7th Cir. 1997).

Generally, an injunction is designed to order persons or parties to refrain from doing certain specified acts. One species of injunction, however, is a mandatory injunction which orders a person or party to take positive action. Historically, at least in Indiana, courts are reluctant to grant injunctions in the mandatory form. *See Schwartz v. Holy Cross*, 83 Ind. App. 658, 149 N.E. 699 (1925). The mandatory injunction is generally not granted unless its proponent makes out a clear case. *See Evansville, S. and N. Ry. Co. v. Evansville and E. Electric Ry.*, 50 Ind. App. 502, 98 N.E. 649 (1912). Mandatory injunctions should not be granted under these authorities except in situations which would make its refusal work real and serious hardship and injustice. This rather ancient teaching under Indiana state law is the kind of historical background that is implicit in the 1938 adoption of Rule 65 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.). It has been suggested that Rule 65 is firmly grounded in pre-rule practice. *See* Developments in the Law-Injunctions, 78 Harvard L. Rev. 996 (1965). Here, proponents of the proposed mandatory injunction are attempting to climb a very steep hill.

The defendant here has cited a somewhat obscure federal statute, namely, 31 U.S.C. §3727, and this Court has taken the trouble to attempt an understanding of that statute. The Court of Appeals for the Federal Circuit in *Fireman's Fund Ins. Co. v. England*, 313 F.3d 1334, 1349 (Fed. Cir. 2002) stated as follows:

> Title 31 of the United States Code, Section 3727(a)(1), (b) (2000) (which deals with "Money and Finance") provides that an "assignment of nay part of a claim against the United States government or of an interest in the claim ... may be made only

> after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." Subsection (c) makes subsection (b) in applicable "to an assignment to a financing institution of money due or to become due under a contract" provided certain conditions (not her involved) are met.
>
> These two provisions together broadly prohibit (with narrow exceptions discussed below) transfers of contracts involving the United States or interests therein, and assignment of claims against the United States. Such contracts (or interest therein) may not be transferred and such claims may be assigned "only after" they have been allowed in a specific amount and provisions made for their payment.
>
> Perhaps Fireman's Fund seeks to sustain the assignment by invoking the exemptions from these prohibitions in 41 U.S.C. §15(b) covering "a bank, trust company, or other financing institution," and in 31 U.S.C. §3127(c) for "an assignment to a financing institution of money due or to become due under a contract." The argument would be that those exemptions reflect a Congressional intent to exempt security transactions from the prohibitions of the Anti-Assignment Act; and that because the contract and claim assignments in the General Indemnity Agreement were for security purposes, they should be viewed as coming within the exception.

*Fireman's Fund Ins. Co.*, pps. 1349-50. Even if this plaintiff could jump through all of the hoops to establish any kind of a prima facie showing for a mandatory injunction, it would come up against the hard edges of 31 U.S.C. §3727 which foreclose the kind of lawsuit that it attempts to make mandatory here. Thus as a matter of law, the plaintiff would be foreclosed. A good try, but it simply will not work.

To make a long story very brief, the effort here to get a mandatory injunction to require these defendants to file a lawsuit against an agency of the United States of America

simply goes beyond the plain wording of the contract in question and runs afoul of the provisions of 31 U.S.C. §3727. There is simply no way in which this Court can grant, much less supervise, such a mandatory injunction. Obviously, the background business machinations here are quite complicated, but this Court is not required to wade through them given the issues raised here by the complaint for a mandatory injunction and the facial examination of the contract itself.

So it is the decision of this Court that the aforesaid motion to dismiss bottomed on Rule 12 of the Fed.R.Civ.P. is now **GRANTED**. Each party to bear its own costs. **IT IS SO ORDERED**.

**DATED:** June 3, 2004

S/ALLEN SHARP
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WILLIAM L. CENTERS,<br><br>Plaintiff,<br><br>v.<br><br>CENTENNIAL MORTGAGE, INC. and MATTHEW T. KANE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:04-CV153AS |

**STIPULATED DECLARATORY JUDGMENT**

Plaintiff William L. Centers ("Centers") and Defendants Centennial Mortgage, Inc. ("Centennial") and Matthew T. Kane ("Kane") have stipulated to the entry of this Declaratory Judgment. The parties stipulate and the Court finds as follows:

1. On February 20, 2004, Centers filed a Complaint for Declaratory Judgment and Mandatory Injunction ("Complaint"). Centers alleged that Centennial and Kane had breached two contracts between the parties, a Stock Purchase Agreement, and a Bill of Sale and Assignment and Assumption Agreement (collectively, the "Agreements"), each executed on August 1, 2000.

2. Centers alleged that the Agreements required Centennial and Kane to cooperate with him in pursuing recovery on an insurance claim against the Department of Housing and Urban Development ("HUD"). The claim arose from Centennial's financing of the renovation of a motel into a residential care facility in Lake County, Indiana. HUD insured Centennial's loan. The real estate developers defaulted on the loan, and Centennial filed a claim with HUD for insurance benefits. HUD instructed Centennial to draw on a letter of credit posted

in connection with the renovation transaction, and informed Centennial that it would reduce the proceeds of any insurance claim by that amount. Centennial followed HUD's instruction and drew on the letter of credit. Litigation subsequently ensued in Indiana state courts regarding whether Centennial had a right to draw on the letter of credit and Centennial ultimately was found liable for a total of $202,730.23. Centennial then sought to recover this amount and related attorney's fees from HUD, which refused to make a supplemental payment to Centennial on Centennial's mortgage insurance claim.

3. From the time Centennial financed the real estate development until August 1, 2000, Centers owned all the outstanding shares of Centennial and was the chief executive officer of Centennial.

4. Centennial's liability regarding the letter of credit was not final until April 3, 2001, when the Indiana Court of Appeals ruled that Centennial owed $202,730.23 to one of the parties involved in the real estate development. *See Centennial Mortgage, Inc. v. Blumenfeld*, 745 N.E.2d 268 (Ind. Ct. App. 2001).

5. Centers alleged that the claim against HUD to recover $202,730.23 and related attorney's fees was a chose in action which Centennial had assigned to him and that, as a result, Centers was entitled to pursue the claim against HUD and to receive any proceeds that may be generated as a result of that claim. Centers also alleged that the Agreements required Centennial to allow Centers to file a lawsuit against HUD in Centennial's name. Therefore, Centers sought a declaratory judgment that the claim against HUD was a chose in action under the Agreements and that Centennial and Kane were required to cooperate with him and perform

those acts necessary to enforce his rights against HUD, and a mandatory injunction requiring Centennial and Kane to take such actions. Centers sought no other relief.

6. On March 15, 2004, Centennial and Kane filed a motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On June 3, 2004, the Court filed a *Memorandum and Order* granting the motion to dismiss, and judgment was entered on June 4, 2004. This decision was appealed to the United States Court of Appeals for the Seventh Circuit, which issued a published opinion on February 22, 2005. *See Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930 (7th Cir. 2005).

7. The Seventh Circuit ruled, among other things, that Centennial's claim against HUD for a supplemental payment of $202,730.23 and related attorney's fees on Centennial's mortgage insurance claim is a chose in action which was assigned to Centers under the Agreements, but that the Agreements do not obligate Centennial and Kane to sue HUD.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That Centennial's claim against HUD for a supplemental payment of $202,730.23 and related attorney's fees on Centennial's mortgage insurance claim is a chose in action under the Agreements that was assigned to Centers.

2. That, Centers shall be entitled to receive any proceeds recovered as a result of this claim against HUD.

3. That Centennial and Kane are not obliged to assist Centers in pursuing this claim against HUD.

Entry of this Stipulated Declaratory Judgment resolves all of the issues that were litigated. Accordingly, the Further Pretrial Conference scheduled for April 1, 2005 is vacated, and this action is ordered off the Court's docket.

Dated this 30th day of March, 2005.

s/ ALLEN SHARP
ALLEN SHARP, JUDGE
UNITED STATES DISTRICT

Approved as to form and content:

BARNES & THORNBURG LLP

By /s/ Timothy J. Abeska
Timothy J. Abeska (3998-71)
Jesse M. Barrett (23811-71)
600 1st Source Bank Center
100 North Michigan Street
South Bend, IN 46601-1632
Telephone: (574) 233-1171

Attorneys for Plaintiff

BOVERI MURPHY RICE & LADUE LLP

By /s/ John D. LaDue
John D. LaDue
Timothy M. Curran
400 Plaza Building
210 South Michigan Street
South Bend, Indiana 46601
Telephone: (574) 232-0300

Attorneys for Defendants

FHA Project No. [illegible]

FHA FORM NO. 4118-D
(CORPORATE)
(Revised April 1953)

# MORTGAGE NOTE

$2,270,000.00

Indianapolis, Indiana

January 18, 1989

FOR VALUE RECEIVED, the undersigned, Lake County Trust Company, as Trustee under Trust Agreement dated January 29, 1958, known as Trust Number 2788 promises to pay to Centennial Mortgage, Inc., a corporation organized and existing under the laws of Missouri, or order, the principal sum of Two Million Two Hundred Seventy Thousand and 00/100 Dollars ($ 2,270,000.00 ), with interest from date at the rate of ten and three quarters per centum (10.75%) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows. Interest only on the outstanding principal balance payable on February 1,1989, and monthly thereafter until June 1, 1990. Commencing on July 1, 1990 and on the first day of each month thereafter until the entire indebtedness has been repaid, installments of principal and interest shall be paid in the sum of Twenty-one Thousand One Hundred Ninety and 03/100 Dollars ($21,190.03), such installments to be applied first to interest and the balance to principal. In any event, the balance to principal, if any, remaining unpaid, plus accrued interest shall be payable in full on June 1, 2020.

Both principal and interest shall be payable at the office of Centennial Mortgage, Inc., 501 E. Monroe, Suite 220, South Bend, Indiana 46601 or such other place as the holder may designate in writing.
See Rider attached hereto for prepayment and late charge provisions.

~~[illegible]~~

~~[illegible]~~

If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this note equals or exceeds the amount of such required installment of principal.

The makers, endorsers, sureties, guarantors, and all other parties now or hereafter personally liable hereon waive the benefit of valuation and appraisement laws and waive presentment, demand for payment, protest and notice of dishonor, and the endorsers, sureties, and guarantors, consent that the owner or holder hereof shall have the right, without notice, to deal in any way at any time with any party hereto or to grant to any such party any extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this note, without in any way affecting the personal liability of any party hereunder.

This note is secured by a mortgage of even date herewith on real estate located in the City of Gary, County of Lake, State of Indiana, and may be further secured by a chattel mortgage to be hereafter executed on personal property located in the City of Gary, County of Lake, State of Indiana.

IN WITNESS WHER. of the undersigned has caused this note to be executed in its name and behalf by its general partner by its President and Secretary. ~~and its corporate seal to be hereunto affixed and attested by its Secretary~~, both thereunto duly authorized the day and year first above written. Lake County Trust Company, as Trustee under Trust dated January 29, 1980, known as Trust Number 3780

[CORPORATE SEAL]

By SEE SIGNATURE PAGE ATTACHED
~~President~~
Trust Officer

ATTEST:

By ______________________
Secretary.

SEE SIGNATURE PAGE ATTACHED
~~Secretary~~ Trust Officer

I HEREBY CERTIFY that this is the note described in, and secured by mortgage of even date herewith and in the same principal amount as herein stated, on real estate in the County of

State of Indiana. Dated this day of , 19

SEE SIGNATURE PAGE ATTACHED
Notary Public.

The form of this instrument was prepared by the Office of the General Counsel of the Federal Housing Administration, and the material in the blank space in the form was inserted by or under the direction of Daniel H. Brewer, Attorney at Law.

STATE OF INDIANA

LOAN NO. 073-43095-PN-WAH-SR

Mortgage Note

Lake County Trust Company, as Trustee under Trust Number 3788

TO

Centennial Mortgage, Inc.

No. 073-43095

Insured under Section 232 of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on August 29, 1988

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By ______________________
(Authorized Agent)

Date ______________________

A total sum of $ ______ has been approved for insurance hereunder by the Commissioner

FEDERAL HOUSING COMMISSIONER

By ______________________
(Authorized Agent)

Date ______________________

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

FHA Form (Rev. 4/63) FHA-Wash., D. C.

RIDER TO MORTGAGE NOTE

Dated January 15, 1989

Residential Care Facility of Miller Beach
FHA Project No. 073-43095-PM-WAH-SR

1. This Note may not be prepaid in whole or in part prior to June 1, 2000. Thereafter, this Note is prepayable without premium in whole or in part. Partial prepayments shall be in amounts equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the Holder.

2. Notwithstanding any prepayment prohibition imposed by this Note with respect to prepayments made prior to July 1, 2000, the indebtedness may be prepaid in part or in full at any time without the consent of the Mortgagee and without prepayment penalty if the Secretary of the U.S. Department of Housing and Urban Development determines that prepayment will avoid a mortgage insurance claim and is therefore in the best interest of the Federal Government.

3. In the event any installment, or portion thereof, due under this Note shall not have been received by the Holder more than fifteen (15) days after its due date, there shall be due, in addition to other sums then due hereunder, a sum equal to two cents ($.02) on each dollar ($1.00) so delinquent.

mb9

This note is executed by LAKE COUNTY TRUST COMPANY, not personally but as TRUSTEE as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee, and is payable only out of the property specifically described in said Mortgage securing the payment hereof, by enforcement of the provisions contained in said Mortgage. No personal liability shall be asserted or be enforceable against the promisor or any person interested beneficially or otherwise in said property specifically described in said Mortgage given to secure the payment hereof, or in the property or funds at any time subject to said trust agreement, because or in respect of this note or the making, issue or transfer thereof, all such liability, if any, being expressly waived by each taker and holder hereof, but nothing herein contained shall modify or discharge the personal liability expressly assumed by the guarantor hereof, if any, and each original and successive holder of this note accepts the same upon the express condition that no duty shall rest upon the undersigned to sequester the rents, issues and profits arising from the property described in said Mortgage, or the proceeds arising from the sale or other disposition thereof, but that in case of default in the payment of this note or of any installment of interest, the sole remedy of the holders hereof shall be by foreclosure of the said mortgage given to secure the indebtedness evidenced by this principal note in accordance with the terms and provisions in said Mortgage set forth or by action to enforce the personal liability of the guarantor, if any, of the payment hereof, or both.

IN WITNESS WHEREOF, LAKE COUNTY TRUST COMPANY, not personally but as Trustee as aforesaid, has caused these presents to be signed by its Vice-President and Trust Officer and attested by its Assistant-Secretary this 18th day of January, 1989.

LAKE COUNTY TRUST COMPANY, not personally but as Trustee under the provisions of a Trust Agreement dated January 29, 1988 and known as Trust No. 3788

By: [signature]
Donna LaMere, Vice-President and Trust Officer

ATTEST:

By: [signature]
Charlotte L. Keilman
Assistant-Secretary

STATE OF INDIANA )
)SS:
COUNTY OF LAKE )

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared the within named Donna LaMere, Vice President and Trust Officer and Charlotte L. Keilman, Assistant Secretary of the Lake County Trust Company, who acknowledge the execution of the foregoing instrument as the free and voluntary act of said corporation, and as their free and voluntary act acting for such corporation, as Trustee.

Witness my hand and seal this 13th day of January, 1989.

[signature]
Starr T. Lugar-Notary Public

My Commission Expires June 25, 1991

Resident: Lake County, Indiana

09/29/2005 09:46 HUD-OFFICE OF LITIGATION → 95147965 NO.682 006

HDF

FHA FORM NO. 2580
Rev. 7/75

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

Approval of Budget Bureau not required

2nd REVISED

# MAXIMUM INSURABLE MORTGAGE

2nd REVISED

Project Name: MILLER BEACH

Project No. 073-43095-PM-WAH: SR

To: CENTENNIAL MORTGAGE, INC.
*Mortgagee*
3206 Sugar Maple Business Court
*Street*
South Bend, Indiana 46628
*City and State*

LAKE COUNTY TRUST COMPANY, AS TRUSTEE UNDER AGREEMENT DATED JAN. 29, 1988 & KNOWN AS TRUST NO. 3788 4905 Melton Road
*Street*
Gary, Indiana
*City and State*

Dear Sirs:

This Administration, pursuant to the Agreement and Certification executed in connection with the above project, has reviewed the mortgagor's certified statement of actual cost and in reliance thereon has made certain related determinations as required under Section 227 of the National Housing Act. Accordingly, the Commissioner will endorse as insured an original credit instrument, secured by a first mortgage upon the land and property included in the project, in an amount not to exceed that set forth herein below.

It is understood, however, that any estimated items of cost may result in a further reduction of the mortgage when the actual costs are established, that such a reduction, if any, must be made in accordance with the aforesaid Agreement and Certification, and that acceptance of items "to be paid in cash within 45 days after final endorsement" is conditioned upon proof of payment of such items in cash. Failure to comply with this requirement may result in a mandatory prepayment to the mortgage.

Pursuant to Section 227 of the National Housing Act, all items approved herein are final and incontestable, except for fraud or material misrepresentation on the part of the mortgagor, as of the date of the final endorsement of the mortgage for insurance, ~~except that items shown on FHA Form 2330 to be paid within 45 days, shall not be considered final and incontestable until the date of HUD's approval of the supplemental cost certification~~.

| | | | |
|---|---|---|---|
| 1. (a) Original Mortgage Amount | | | $ 2,270,000.00 |
| (b) Less: Minus Effect of Construction Changes, if any | $ -0- | | |
| (c) Unused Contingency Reserve, if any (Rehabilitation) | $ 1,582.00 | | |
| (d) Total Deductions from Original Mortgage Amount | | | $ 1,582.00 |
| (e) Adjusted Original Mortgage Amount | | | $ 2,268,418.00 |
| 2. Certified "Actual Cost" (From FHA Form 2330) | | $ 2,836,662.27 | |
| 3. Disallowed Amounts (Schedule 2) | | $ 519,109.92 | |
| 4. Recognized "Actual Cost" of Improvements | | $ 2,317,552.35 | |
| 5. Land | | $ 200,000.00 | |
| 6. TOTAL LAND & IMPROVEMENTS | | $ 2,517,552.35 | |
| 7. Statutory Percentage of Total Cost ( 90 % of Item 6) | | $ 2,265,579.72 | |
| 8. Lesser of: (i) $ -0- Existing Mortgage Indebtedness on (Land and Improvements to be Rehabilitated) or (ii) an Amount Equal to -0- % of the Fair Market Value $ -0- of Land and Improvements Before (Repair or Rehabilitation) | | $ -0- | |
| 9. TOTAL — Line 7 plus Line 8, (if any) | | | $ 2,265,579.72 |
| 10. Maximum Insurable Mortgage in Multiples of $100, (Item 1(e) or Item 9 whichever is the Lesser) if Grants involved see attached sheet to this form for Reconciliation of Adjustments, if required | | | $ 2,265,500.00 |

Schedule 1. Approval of the Maximum Insurable Mortgage, as stated on Line 10, is conditioned upon the following:

[illegible — typed over with X's]

A. Notes payable in the sum of $187,162.44 shown on the required Balance Sheet must be in the form of HUD approving notes (FHA 2223).

B. The mortgagor shall place in excrow with the mortgagee the sum of $510,156.94 which represents the "to be paid in cash items" identified on the FHA 2330.

Mailed 6-21-91
RAD, Centennial, Lake Co., HDG, HDH (2) - HDF

Previous Edition is Obsolete

Schedule 1 (cont.)

Schedule 2. Disallowed Costs

| | |
|---|---|
| CONSTRUCTION COSTS - Limited by the Upset Amount | $ 368,624.16 |
| TAXES - limited to the amount shown on the FHA 2264 | 8,332.24 |
| INSURANCE - limited to the amount shown on the FHA 2264 | 61,074.94 |
| TITLE & RECORDING - limited to amount shown on the FHA 2264 | 7,436.00 |
| AUDIT - limited to amount shown on the FHA 2264 | 3,400.00 |
| ORGANIZATION - limited to amount shown on the FHA 2264 | 5,725.00 |
| SURVEY - not shown on the FHA 2264 | 2,300.20 |
| UTILITIES - not allowd under this accounting classification | 11,559.21 |
| MAJOR MOVABLE - limited to documented amount | 40,214.17 |
| BOND - included in construction contract | 10,444.00 |
| | $ 519,109.92 |

Schedule 3. Computation of Mortgagor's Initial Equity Investment

1. Total Land and Improvements *(Line 6 above)* $ 2,517,552.35
2. Less: Maximum Insurable Mortgage *(Line 10 above)* $ 2,265,500.00
3. Mortgagor's Initial Equity Investment $ 252,052.35

Schedule 4. Tentative Disallowances. Those items which appear below are classified as tentative disallowances and may be recognized and approved as certifiable costs subsequent to the issuance of this form provided that satisfactory clarifying documentation is submitted within 30 days. Whether or not these items are subsequently approved will have no effect on the maximum insurable mortgage listed on line 10 of this form.

Assistant Secretary for HPMC/FHA Commissioner

cah 6-20-91 Revised

Dated 6-20-91 By [signature]
Authorized Agent

[initials] 6-20-91

FHA Project No. [illegible]

FHA FORM NO. 4118-D
[illegible]
(Revised April [illegible])

# MORTGAGE NOTE

$2,270,000.00

[illegible], Indiana
January 18, 1989

FOR VALUE RECEIVED, the undersigned, Lake County Trust Company, as Trustee under Trust Agreement dated January 19, 1958, known as Trust Number 3783 promises to pay to Centennial Mortgage, Inc., or order, the a corporation organized and existing under the laws of Missouri principal sum of Two Million Two Hundred Seventy Thousand and 00/100 Dollars ($ 2,270,000.00 ), with interest from date at the rate of ten and three quarters per centum (10.75%) per annum on the unpaid balance until paid. The said principal and interest shall be payable in monthly installments as follows. Interest only on the outstanding principal balance payable on February 1,1989, and monthly thereafter until June 1 , 1990. Commencing on July 1, 1990 and on the first day of each month thereafter until the entire indebtedness has been repaid, installments of principal and interest shall be paid in the sum of Twenty-one Thousand One Hundred Ninety and 03/100 Dollars ($21,190.03), such installments to be applied first to interest and the balance to principal. In any event, the balance to principal, if any, remaining unpaid, plus accrued interest shall be payable in full on June 1, 2020.

Both principal and interest shall be payable at the office of Centennial Mortgage, Inc., 501 E. Monroe, Suite 220, South Bend, Indiana 46601 or such other place as the holder may designate in writing.

See Rider attached hereto for prepayment and late charge provisions.

~~Privilege is reserved to pay the debt in whole, or in an amount equal to one or more monthly payments on principal next due on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder. If this debt is paid in full prior to maturity and while insured under the National Housing Act, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof any adjusted premium charge required by the applicable Regulations.~~

~~Notwithstanding any provision herein for a prepayment charge or premium, any prepayment [illegible] which does not exceed in aggregate [illegible] percent [illegible] of the original principal amount of this note in any one calendar year may be made without any prepayment charge or premium.~~

If default be made in the payment of any installment under this note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this note equals or exceeds the amount of such required installment of principal.

The makers, endorsers, sureties, guarantors, and all other parties now or hereafter personally liable hereon waive the benefit of valuation and appraisement laws and waive presentment, demand for payment, protest and notice of dishonor, and the endorsers, sureties, and guarantors, consent that the owner or holder hereof shall have the right, without notice, to deal in any way at any time with any party hereto or to grant to any such party any extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this note, without in any way affecting the personal liability of any party hereunder.

This note is secured by a mortgage of even date herewith on real estate located in the City of Gary , County of Lake State of Indiana, and may be further secured by a chattel mortgage to be hereafter executed on personal property located in the City of Gary , County of Lake , State of Indiana.

IN WITNESS WHER. of the undersigned has caused this note to be executed in its name and behalf by its general partner by its President and Secretary, ~~and its corporate seal to be hereunto affixed and attested by its Secretary~~, both thereunto duly authorized the day and year first above written.

Lake County Trust Company, as Trustee under Trust dated January 29, 1980, known as Trust Number 3780

[CORPORATE SEAL]

By SEE SIGNATURE PAGE ATTACHED
~~President~~
Trust Officer

By ______________________
Secretary.

ATTEST:

SEE SIGNATURE PAGE ATTACHED
~~Secretary~~ Trust Officer

---

I HEREBY CERTIFY that this is the note described in, and secured by mortgage of even date herewith and in the same principal amount as herein stated, on real estate in the County of

State of Indiana. Dated this day of , 19

SEE SIGNATURE PAGE ATTACHED
Notary Public.

---

The form of this instrument was prepared by the Office of the General Counsel of the Federal Housing Administration, and the material in the blank space in the form was inserted by or under the direction of Daniel H. Brewer, Attorney at Law.

STATE OF INDIANA

LOAN NO. 073-43095-PM-WAH-SR

Mortgage Note

Lake County Trust Company, as Trustee under Trust Number 3780

TO

Centennial Mortgage, Inc.

No. [illegible]

Insured under Section 232 of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on August 29, 1980

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By ______________________ (Authorized Agent)

Date 1/14/[illegible]

A total sum of $ ______ has been approved for insurance hereunder by the Commissioner

FEDERAL HOUSING COMMISSIONER

By ______________________ (Authorized Agent)

Date ______

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

FHA-Wash., D.C. [illegible]

RIDER TO MORTGAGE NOTE

Dated January 15, 1989

Residential Care Facility of Miller Beach
FHA Project No. 073-43095-PM-WAH-SR

1. This Note may not be prepaid in whole or in part prior to June 1, 2000. Thereafter, this Note is prepayable without premium in whole or in part. Partial prepayments shall be in amounts equal to one or more monthly payments on principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the Holder.

2. Notwithstanding any prepayment prohibition imposed by this Note with respect to prepayments made prior to July 1, 2000, the indebtedness may be prepaid in part or in full at any time without the consent of the Mortgagee and without prepayment penalty if the Secretary of the U.S. Department of Housing and Urban Development determines that prepayment will avoid a mortgage insurance claim and is therefore in the best interest of the Federal Government.

3. In the event any installment, or portion thereof, due under this Note shall not have been received by the Holder more than fifteen (15) days after its due date, there shall be due, in addition to other sums then due hereunder, a sum equal to two cents ($.02) on each dollar ($1.00) so delinquent.

mb9

This note is executed by LAKE COUNTY TRUST COMPANY, not personally but as TRUSTEE as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee, and is payable only out of the property specifically described in said Mortgage securing the payment hereof, by enforcement of the provisions contained in said Mortgage. No personal liability shall be asserted or be enforceable against the promisor or any person interested beneficially or otherwise in said property specifically described in said Mortgage given to secure the payment hereof, or in the property or funds at any time subject to said trust agreement, because or in respect of this note or the making, issue or transfer thereof, all such liability, if any, being expressly waived by each taker and holder hereof, but nothing herein contained shall modify or discharge the personal liability expressly assumed by the guarantor hereof, if any, and each original and successive holder of this note accepts the same upon the express condition that no duty shall rest upon the undersigned to sequester the rents, issues and profits arising from the property described in said Mortgage, or the proceeds arising from the sale or other disposition thereof, but that in case of default in the payment of this note or of any installment of interest, the sole remedy of the holders hereof shall be by foreclosure of the said mortgage given to secure the indebtedness evidenced by this principal note in accordance with the terms and provisions in said Mortgage set forth or by action to enforce the personal liability of the guarantor, if any, of the payment hereof, or both.

IN WITNESS WHEREOF, LAKE COUNTY TRUST COMPANY, not personally but as Trustee as aforesaid, has caused these presents to be signed by its Vice-President and Trust Officer and attested by its Assistant-Secretary this 13th day of January, 1989.

LAKE COUNTY TRUST COMPANY, not personally but as Trustee under the provisions of a Trust Agreement dated January 29, 1988 and known as Trust No. 3768

By: [signature]
Donna LaMere, Vice-President and Trust Officer

ATTEST:

By: [signature]
Charlotte L. Keilman
Assistant-Secretary

STATE OF INDIANA )
)SS:
COUNTY OF LAKE )

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared the within named Donna LaMere, Vice President and Trust Officer and Charlotte L. Keilman, Assistant Secretary of the Lake County Trust Company, who acknowledge the execution of the foregoing instrument as the free and voluntary act of said corporation, and as their free and voluntary act acting for such corporation, as Trustee.

Witness my hand and seal this 13th day of January, 1989.

[signature]
Star T. Lugar-Notary Public

My Commission Expires
June 25, 1991

Resident: Lake County, Indiana

HDF

FHA FORM NO. 2580
Rev. 7/75

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

Approval of Budget Bureau not required

2nd REVISED

# MAXIMUM INSURABLE MORTGAGE

2nd REVISED

Project Name: MILLER BEACH

Project No. 073-43095-PM-WAH-SR

To: CENTENNIAL MORTGAGE, INC.
Mortgagee
3206 Sugar Maple Business Court
Street
South Bend, Indiana 46628
City and State

LAKE COUNTY TRUST COMPANY, AS TRUSTEE UNDER AGREEEMENT DATED JAN. 29, 1988 & KNOWN AS TRUST NO. 3788 4905 Melton Road
Street
Gary, Indiana
City and State

Dear Sirs:

This Administration, pursuant to the Agreement and Certification executed in connection with the above project, has reviewed the mortgagor's certified statement of actual cost and in reliance thereon has made certain related determinations as required under Section 227 of the National Housing Act. Accordingly, the Commissioner will endorse as insured an original credit instrument, secured by a first mortgage upon the land and property included in the project, in an amount not to exceed that set forth herein below.

It is understood, however, that any estimated items of cost may result in a further reduction of the mortgage when the actual costs are established, that such a reduction, if any, must be made in accordance with the aforesaid Agreement and Certification, and that acceptance of items "to be paid in cash within 45 days after final endorsement" is conditioned upon proof of payment of such items in cash. Failure to comply with this requirement may result in a mandatory prepayment to the mortgage.

Pursuant to Section 227 of the National Housing Act, all items approved herein are final and incontestable, except for fraud or material misrepresentation on the part of the mortgagor, as of the date of the final endorsement of the mortgage for insurance, ~~except that items shown on FHA Form 2330 to be paid within 45 days, shall not be considered final and incontestable until the date of HUD's approval of the supplemental cost certification~~.

1. (a) Original Mortgage Amount — $ 2,270,000.00
   (b) Less: Minus Effect of Construction Changes, if any $ -0-
   (c) Unused Contingency Reserve, if any (Rehabilitation) $ 1,582.00
   (d) Total Deductions from Original Mortgage Amount — $ 1,582.00
   (e) Adjusted Original Mortgage Amount — $ 2,268,418.00
2. Certified "Actual Cost" (From FHA Form 2330) — $ 2,836,662.27
3. Disallowed Amounts (Schedule 2) — $ 519,109.92
4. Recognized "Actual Cost" of Improvements — $ 2,317,552.35
5. Land — $ 200,000.00
6. TOTAL LAND & IMPROVEMENTS — $ 2,517,552.35
7. Statutory Percentage of Total Cost ( 90 % of Item 6) — $ 2,265,579.72
8. Lesser of: (i) $ -0- Existing Mortgage Indebtedness on (Land and Improvements to be Rehabilitated) or (ii) an Amount Equal to -0- % of the Fair Market Value $ -0- of Land and Improvements Before (Repair or Rehabilitation) — $ -0-
9. TOTAL — Line 7 plus Line 8, (if any) — $ 2,265,579.72
10. Maximum Insurable Mortgage in Multiples of $100, (Item 1(e) or Item 9 whichever is the Lesser) if Grants involved see attached sheet to this form for Reconciliation of Adjustments, if required — $ 2,265,500.00

Schedule 1. Approval of the Maximum Insurable Mortgage, as stated on Line 10, is conditioned upon the following:

[illegible]

A. Notes payable in the sum of $187,162.44 shown on the required Balance Sheet must be in the form of HUD approving notes (FHA 2223).

B. The mortgagor shall place in excrow with the mortgagee the sum of $510,156.94 which represents the "to be paid in cash items" identified on the FHA 2330.

Mailed 6-21-91
RAD, Centennial, Lake Co., HDG, HDH (2) ✓ HDF

Previous Edition is Obsolete

Schedule 1 (cont.)

Schedule 2. Disallowed Costs

| | |
|---|---|
| CONSTRUCTION COSTS - Limited by the Upset Amount | $ 368,624.16 |
| TAXES - limited to the amount shown on the FHA 2264 | 8,332.24 |
| INSURANCE - limited to the amount shown on the FHA 2264 | 61,074.94 |
| TITLE & RECORDING - limited to amount shown on the FHA 2264 | 7,436.00 |
| AUDIT - limited to amount shown on the FHA 2264 | 3,400.00 |
| ORGANIZATION - limited to amount shown on the FHA 2264 | 5,725.00 |
| SURVEY - not shown on the FHA 2264 | 2,300.20 |
| UTILITIES - not allowd under this accounting classification | 11,559.21 |
| MAJOR MOVABLE - limited to documented amount | 40,214.17 |
| BOND - included in construction contract | 10,444.00 |
| | $ 519,109.92 |

Schedule 3. Computation of Mortgagor's Initial Equity Investment

| | | |
|---|---|---|
| 1. | Total Land and Improvements *(Line 6 above)* | $ 2,517,552.35 |
| 2. | Less: Maximum Insurable Mortgage *(Line 10 above)* | $ 2,265,500.00 |
| 3. | Mortgagor's Initial Equity Investment | $ 252,052.35 |

Schedule 4. Tentative Disallowances. Those items which appear below are classified as tentative disallowances and may be recognized and approved as certifiable costs subsequent to the issuance of this form provided that satisfactory clarifying documentation is submitted within 30 days. Whether or not these items are subsequently approved will have no effect on the maximum insurable mortgage listed on line 10 of this form.

Assistant Secretary for HPMC/FHA Commissioner

CAH 6-20-91 Revised

Dated 6-20-91 By [signature]

*Authorized Agent*

[initials] 6-20-91