No. 05-591C
(Judge Baskir)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WILLIAM L. CENTERS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

JOHN S. GROAT
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW., 8th Floor
Washington, D.C. 20530
Tele: (202) 514-4325/616-8260
Fax: (202) 514-7965
Attorneys for Defendant

OF COUNSEL:
William Lane
Department of Housing
and Urban Development

February 14, 2006

# TABLE OF CONTENTS

Page

DEFENDANT'S MOTION TO DISMISS .................................................. 1

Statement of the Issues .......................................................................... 1

Statement of Facts .................................................................................. 2

ARGUMENT ............................................................................................ 5

I. Centers Has Not Alleged And Cannot Allege Facts To Establish The Existence of A Contract Between It And The United States ................................................................ 5

II. The Statute of Limitations, 28 U.S.C. § 2501, Bars Any Claim By Centennial Which Accrued, If At All, When HUD Paid Centennial$193,890.93. ............................... 9

CONCLUSION ......................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

Page(s)

Anderson v. United States,
344 F.3d 1343 (Fed. Cir. 2003) .................................................... 5

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir.1985) ..................................................... 6

Berry v. United States,
27 Fed. Cl. 96 (1992) ................................................................. 9

Brighton Village Assocs. v. United States,
52 F.3d 1056 (Fed. Cir.1995) ..................................................... 10

Brown Park Estates-Fairfield Development Co. v. United States,
127 F.3d 1449 (Fed. Cir. 1997) ..................................................... 9

Centennial Mortgage, Inc. v. Blumenfeld,
745 N.E. 2d 268 (Ind. App. 2001) .................................................. 4

Centers v. Centennial Mortgage, Inc.,
398 F.3d 930 (7th Cir. 2005) ........................................................ 4

E.R. Mitchell Const. Co. v. Danzig,
175 F.3d 1369 (Fed. Cir. 1999) .................................................... 6

Erickson Air Crane Co. of Wash. v. United States,
731 F.2d 810 (Fed. Cir.1984) ....................................................... 6

Fireman's Fund Insurance Company v. England,
313 F.3d 1344 (Fed. Cir. 2002) ..................................................... 8

First Hartford Corp. Pension Plan & Trust v. United States,
194 F.3d 1279 (Fed. Cir. 1999) .................................................... 6

Fraass Surgical Mfg. Co., Inc. v. United States,
205 Ct. C 505 F.2d 707 (1974) .................................................... 10

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) ..................................................... 9

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) ............................................... 9, 10

Maher v. United States,
314 F.3d 600 (Fed. Cir.2002), cert. denied, 540 U.S. 821 (2003) .... 5

Montana v. United States,
124 F.3d 1269 (Fed. Cir.1997) .................................................... 6

Oceanic Steamship Co. v. United States,
165 Ct. Cl. 217, 225 (1964) ........................................................ 10

Soriano v. United States,
352 U.S. 270 (1957) ...................................................................... 11

Southern California Federal Sav. & Loan Ass'n v. United States,
422 F.3d 1319 (Fed. Cir. 2005 ) ................................................... 5

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir.1997) .................................................... 10

W.G. Yates & Sons Constr. Co. v. Caldera,
192 F.3d 987 (Fed. Cir.1999) ...................................................... 5

STATUTES

24 C.F.R. § 207.258(a) ................................................................. 3

24 C.F.R. § 207.259(b)(2)(iii) ......................................................... 3

12 U.S.C. § 1715w ........................................................................ 2

28 U.S.C. §1491 .......................................................................... 9

28 U.S.C. § 2501 ...................................................................... 1, 9

28 U.S.C. § 2501 .......................................................................... 9

31 U.S.C. § 3727(a)(1) &( ............................................................. 7

41 U.S.C. § 15(a) ........................................................................... 7

Rule 12(b)(1) ................................................................................... 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM L. CENTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-591C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims, defendant respectfully requests the Court to dismiss the complaint for lack of jurisdiction. In support of this motion, we rely upon the memorandum which follows and the appendix to the parties' September 29, 2005 joint preliminary status report ("App.").

DEFENDANT'S BRIEF

Statement of the Issues

(1) Whether Mr. Centers can prove facts to establish the existence of a contract between himself and the United States.

(1) Whether the statute of limitations , 28 U.S.C. § 2501, bars this action which accrued in 1993 when the payment Mr. Centers now seeks was sought and denied.

# STATEMENT OF THE CASE

## Statement of Facts

On January 18, 1989, Centennial Mortgage, Inc. ("Centennial") entered into a Building Loan Agreement ("Agreement") with developers ("Developers") to construct a nursing home (the "Project"). Centennial's loan to the Developers of $2.27 million was secured by a note ("Note") and a mortgage ("Mortgage"). Complaint ("Compl."), ¶ 6.

When the general contractor for this project was unable to post a completion bond, Mr. David Blumenfeld, a principal of one of the Developers, posted a letter of credit on the contractor's behalf in the amount of $237,760.20. The mortgagor, Centennial, and the contractor executed a Completion Assurance Agreement ("CAA") specifying the circumstances under which draws could be made against this letter of credit, to which agreement the United States Department of Housing and Urban Development ("HUD") was not a party. Compl., ¶ 6.

HUD insured the Note and Mortgage against default pursuant to Section 232 of the National Housing Act ("Act"), 12 U.S.C. § 1715w. See App. 27. Centennial notified HUD of the Project's default on December 31, 1991, requesting that HUD to "advise" whether it "would prefer that we

draw on the letter of credit, or assign it to HUD." App. 1. On January 29, 1992, HUD acknowledged receipt of that election and responded to Centennial's request for advice, as follows: "We suggest you draw on the letter of credit. However, this must be your decision." App. 2.

On July 30, 1992, Centennial advised HUD that it would be drawing on the letter of credit and assigned the mortgage to HUD. See App.1; Compl., ¶ 10.[1] On July 31, 1992, Mr. Blumenfeld sued Centennial to enjoin it from drawing on the letter of credit, in which action HUD was not a party. App. 19 . After the court denied Blumenfeld's request for injunctive relief, Centennial then purportedly elected to draw on the letter of credit in the amount of $212,105.26. Complaint, ¶ 12. On December 6, 1993, HUD paid Centennial $1,851,095.11 of the $2,158,197.72 Centennial sought under its contract of insurance. App. 3.

---

[1] Lenders have the right to elect either to retain the mortgage and acquire the property or to assign the mortgage to HUD, 24 C.F.R. § 207.258(a). When lenders assigns mortgages to HUD, 24 C.F.R. § 207.258(b)(2)(iv) requires lenders to certify the amount actually due under the mortgage. Lenders are is also required to deliver or retain certain items and rights associated with the mortgage, 24 C.F.R. § 207.258(b)(4) &(5), including "(iii) All funds held by the mortgagee for the account of the mortgagor received pursuant to any other agreement. [and ] (iv) The amount of any undrawn balance under a letter of credit used in lieu of a cash deposit." 24 C.F.R. § 207.258(b)(5). If the mortgagee retains any cash items pursuant to 24 C.F.R. § 207.258(b)(5), the total amount of the cash items retained must be deducted from the amount paid to the mortgagee by HUD. 24 C.F.R. § 207.259(b)(2)(iii).

On March 13, 2000, a state court determined that certain draws made against the letter of credit had been unauthorized by the terms of that agreement and, upon that basis, entered a judgment against Centennial in the amount of $193,890.93. After an unsuccessful appeal, Centennial purportedly satisfied this judgment. Compl., ¶ 14. See Centennial Mortgage, Inc. v. Blumenfeld, 745 N.E. 2d 268 (Ind. App. 2001). On August 1, 2000, Mr. Centers purportedly sold his stock in Centennial, and Centennial purportedly distributed to Centers all "chose in action (all rights recoverable by lawsuit by Centennial pertaining to matters arising prior to Closing)." Compl., ¶ 5.

After the sale, Centennial unsuccessfully sought reimbursement from HUD and, when these efforts failed, Mr. Centers urged Centennial to sue HUD. App. 23. When Centennial refused, Mr. Centers sued Centennial in the United States district court seeking an order requiring Centennial to sue HUD. The district court 's judgment dismissing the complaint subsequently was affirmed in part and reversed in part. See Centers v. Centennial Mortgage, Inc., 398 F.3d 930 (7th Cir. 2005). The parties then entered into a stipulated declaratory judgment, to which HUD is not a party. App. 23.

## ARGUMENT

I. Centers Has Not Alleged And Cannot Allege Facts To Establish The Existence of A Contract Between Him And The United States.

Because Mr. Centers has not alleged and cannot allege facts to establish the existence of a contract between him the United States, this Court should dismiss this action for lacks of jurisdiction. Southern California Federal Sav. & Loan Ass'n v. United States, 422 F.3d 1319 (Fed. Cir. 2005 ).

Although this is an action for breach of contract (Compl., ¶¶ 16 &17), the complaint correctly refrains from alleging that any contract ever existed between Mr. Centers and HUD. Under the controlling precedent, "'the government consents to be sued only by those with whom it has privity of contract.' " Anderson v. United States, 344 F.3d 1343, 1351 (Fed. Cir. 2003) (citation omitted); Maher v. United States, 314 F.3d 600, 603 (Fed. Cir.2002), cert. denied, 540 U.S. 821 (2003); W.G. Yates & Sons Constr. Co. v. Caldera, 192 F.3d 987, 991 (Fed. Cir.1999). In the absence of privity, the doctrine of sovereign immunity thus bars this suit based upon a contract of insurance.

Controlling precedent summarizes the law regarding privity, as follows:

> As a general proposition, the "government consents to be sued only by those with whom it has privity of contract." Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir.1984). There are exceptions to this general rule. Thus, for example, despite lack of privity, we have held that suits may be brought against the government in the Court of Federal Claims by an intended third-party beneficiary, see Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir.1997), by a subcontractor by means of a pass-through suit when the prime contractor is liable to the subcontractor for the subcontractor's damages, see E.R. Mitchell Const. Co. v. Danzig, 175 F.3d 1369, 1370-71 (Fed. Cir. 1999), and by a Miller Act surety for funds improperly disbursed to a prime contractor, see Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160- 63 (Fed. Cir.1985). However, the common thread that unites these exceptions is that the party standing outside of privity by contractual obligation stands in the shoes of a party within privity.

First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999).

In the absence of a express contract with the United States, Mr. Centers alleges that Centennial purportedly distributed to him all “chose in action (all rights recoverable by lawsuit by centennial pertaining to matters arising prior to Closing).” This allegation is insufficient as a

matter of law to establish the Court 's privity and the Court's jurisdiction for two reasons.

First, such an assignment as alleged does not constitute one of the recognized exceptions to the general proposition that there must be privity. Mr. Centers clearly "does [not] stand[] in the shoes of a party within privity," because Mr. Centers brought this action when Centennial refused to institute the suit.

Second, the Anti-Assignment Act expressly bars such an assignment, because Mr. Centers does not "stand[] in the shoes of a party within privity." That Act consists of two statutory provisions. The first of these, 41 U.S.C. § 15(a), provides that, "[n]o contract . . . or any interest therein, shall be transferred by the party to whom such contract . . . is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned." The second, 31 U.S.C. § 3727(a)(1) &(b), provides that "a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim" "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. . . ."

> These two provisions together broadly prohibit . . . transfers of contracts involving the United States or interests therein, and assignment of claims against the United States. Such contracts (or interest therein) may not be transferred and such claims may be assigned "only after" they have been allowed in a specific amount and provisions made for their payment. A central purpose of the Anti-Assignment Act is "to protect the Government from secret assignment arrangements, to prevent possible multiple claims, and to make unnecessary the investigation of alleged assignments."

Fireman's Fund Insurance Company v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002) (citation omitted).

Even if this Court might in some fashion construe the assignment as alleged as establishing privity, Mr. Centers' actions in this case evince the sort of activity that the Anti-Assignment Act abhors and seeks to prohibit. Centennial sought to persuade HUD pay it additional money on this insurance claim after it allegedly had irrevocably assigned the claim at issue here to Mr. Centers. In the course of its efforts to obtain payment, Centennial never disclosed to HUD the fact that its cause of action had been assigned. Only after Mr. Centers' suit to compel Centennial to sue HUD had been dismissed, Mr. Centers finally disclosed the alleged assignment. Until then, just like the plaintiff in American National Bank and Trust (see 23 Cl. Ct. at 546), Centennial and Mr. Centers did not reveal the

assignment. Enforcing the Anti-Assignment here would serve the central statutory purpose of protecting the Government against such secret assignments and multiple claims. American National Bank and Trust , supra.

II. The Statute of Limitations, 28 U.S.C. § 2501, Bars Any Claim By Centennial Which Accrued, If At All, When HUD Paid Centennial$193,890.93.

The statute of limitations , 28 U.S.C. § 2501, now bars any action which accrued in 1993 when HUD paid Centennial $193,890.93.

This Court's jurisdiction is based upon the Tucker Act, 28 U.S.C. §1491. The relevant statute of limitations, 28 U.S.C. § 2501, which is "an express limitation on the Tucker Act's waiver of sovereign immunity," Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990), bars every claim of which the court has jurisdiction "unless the petition thereon is filed within six years after such claim first accrues." See Brown Park Estates-Fairfield Development Co. v. United States 127 F.3d 1449, 1454-55 (Fed. Cir. 1997). Section 2501 is jurisdictional and, therefore, may not be waived by this Court or the parties. Hart, 910 F.2d at 818-19. ; Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); accord Berry v. United States, 27 Fed. Cl. 96, 101 (1992).

For purposes of 28 U.S.C. § 2501, "a cause of action against the government has first accrued when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians, 855 F.2d at 1577. "[A] breach of contract is a failure to perform a contractual duty when it is due." Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir.1997). Where a claim is based on the alleged obligation of the Government to pay money under a contract, “the claim first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract.” Fraass Surgical Mfg. Co., Inc. v. United States, 205 Ct. Cl. 585, 591, 505 F.2d 707 (1974) (quoting Oceanic Steamship Co. v. United States, 165 Ct. Cl. 217, 225 (1964)). A claim first accrues within the meaning of the statute of limitations "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Brighton Village Assocs. v. United States, 52 F.3d 1056, 1060 (Fed. Cir.1995)

Centennial’s breach of contract claim thus accrued, if at all, no later than December 6, 1993, when HUD paid Centennial only $1,851,095.11 of the $2,158,197.72 that Centennial sought under its contract of insurance.

If HUD had any obligation to pay Centennial that sum, that obligation could only have existed because of events that occurred before December 6, 1993. Centennial's election to pursue permissive administrative remedies to collect monies now sought by Mr. Centers could not as a matter of law possibly extend the limitations period for Mr. Centers now to bring this action. Soriano v. United States, 352 U.S. 270 (1957) (pursuit of voluntary remedies does not suspend running of limitations period). The sole effect of subsequent court decisions thus was to determine, as to those parties, the legal import of those earlier events. Accordingly, the statute of limitations ran and barred any claim no later than December 6, 1999, five and one half years before Mr. Centers brought this case.

## CONCLUSION

For the reasons set forth above, this action should be dismissed for lack of jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

Of Counsel;
William Lane
Department of Housing
and Urban Development

/s/John S. Groat
JOHN S. GROAT
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 514-4325/166-8260
Fax: (202) 514-7965
jack.groat@usdoj.gov

February 14, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that onFebruary 14, 2006, a copy of foregoing DEFENDANT'S MOTION TO DISMISS was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/ s/John S. Groat

Copies provided to --

The Chambers of Judge Baskir

The Chambers of Judge C. Miller (ADR Judge)