IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM L. CENTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-591C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, respectfully submits its reply to Mr. Centers' February 26, 2006 opposition to defendant's motion to dismiss ("Opp.'').

I. Mr. Centers' Is Not In Privity Of Contract With The United States

Mr. Centers' reliance upon Insurance Co. of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001), for the proposition that he does not have to establish the existence of privity of contract, Opp. at 6, is misplaced. The court in Insurance Co. of the West considered "whether a subrogee, after stepping into the shoes of a Government contractor . . . may bring suit against the United States" in light of the Supreme Court's decision in Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999). 243 F.3d at 1374. The isolated statements he quotes and upon which and he relies obviously must be considered in light of the specific question the

court addressed and actually decided. Upon deconstruction, Mr. Centers' argument is that general rule requiring privity is nullified by the recognition of a limited exception to that general rule. In recognizing the continuing validity of an exception to the general rule that a party must have privity to bring a suit against the Untied States under the Tucker Act, Insurance Co. of the West by implication actually supports the continued validity of the general rule that a party must establish privity.

In response to the Government's demonstration that the alleged assignment here violates the specific prohibitions of the Anti-Assignment Act, 31 U.S.C. § 3727(a)(1) & (b) & 41 U.S.C. § 15(a), Mr. Centers contends that Centennial's assignment to him "does not contravene the Act," without any analysis or argument of the plain language to support the contention. He is incorrect.

Section 5(a), title 41, provides that, "[n]o contract . . . or any interest therein, shall be transferred by the party to whom such contract . . . is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned." Mr. Centers alleges that Centennial transferred to him an "interest" in ~~a~~ its insurance contract at issue as a part of his sale of Centennial. Read

literally, the Act prohibits that transfer and "annul[s]" the Centennial insurance contract "so far as the United States is concerned." "In the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive." United States v. James, 478 U.S. 597, 606 (1986) (internal quotation marks omitted) (quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)). "Where, as here, the statutory language is plain and unambiguous, 'the sole function of the courts is to enforce it according to its terms.'" See James v. Tablerion, 363 F.3d 1352, 1358 (Fed. Cir. 2004) (quoting United States v. Ron Pair Enters., 489 U.S. 235, 241(1989) (quoting Caminetti v. United States, 242 U.S. 470, 485(1917) (internal quotation marks omitted))).

In response to the Government's demonstration that the alleged assignment here violates the policies underlying the Anti-Assignment Act, Mr. Centers does not respond to and therefor concedes the Government's demonstration in our opening brief that Centennial concealed the existence of the assignment when it pressed a claim against United States Department of Housing and Urban Development ("HUD") for the relief Mr. Centers' now seeks in this action. Centennial's and Mr. Centers'

respective states of mind – whether Centennial or Mr. Center intended to defraud the United States, deliberately concealed the assignment and obtain payment by a misrepresentation, or in some manner innocently presented the claim – have no proper relevance. The purpose of the Anti-Assignment Act is to prohibit just such a concealed transfer and just such an assertion of such a claim by a party who has no right to do so. Fireman's Fund Insurance Company v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002) ("A central purpose of the Anti-Assignment Act is "to protect the Government from secret assignment arrangements, to prevent possible multiple claims, and to make unnecessary the investigation of alleged assignments.") (citation omitted). If Centennial had prevailed upon HUD to pay its claim and then had refused to pay Mr. Centers, Mr. Centers' current theory would have allowed him to bring this action against the United States upon the ground that the actual owner of his claim had not been paid. As in American National Bank and Trust v. United States, 23 Cl. Ct. 542, 547 (1991), enforcing the Anti-Assignment here would serve the central statutory purpose of protecting the Government against secret assignments and multiple claims.

Mr. Centers’ reliance upon Novo Trading Corp. v. Commissioner, 113 F.2d 320 (2d Cir.1940), and United States v. Improved Premises Located at the Northwest Corner of Irving Place and Sixteenth, 204 F. Supp. 868 (S.D. N.Y.1962), is misplaced, because both cases involved the transfer of claims from a closely held corporation to the corporation's stockholders made in the course of and incident to distributing the corporation's assets upon dissolution of the corporation. Here, there was no disposition upon dissolution, but rather a voluntary transfer in the course of the sale of the corporation in violation of the plain language of the Act. This Court recently rejected an expanded reading of the two cases Mr. Centers relies, observing that voluntary assignments such as occurred here are “generally void.” Holland v. United States, 62 Fed. Cl. 395, 400 (2004). (“In contrast to voluntary assignments, which are generally void vis-à-vis the Government under the Anti-Assignment Act, courts have created exceptions to the Act for certain "transfers by operation of law," such as intestate succession, bankruptcy transfers, subrogation, assignments by judicial order, and a business merger, consolidation, sale, or other change in business structure.”) (citations omitted). Unlike the situation in National Australia Bank v. United States, 54 Fed. Cl. 238 (2002), the transfer here was not

analogous to any transfer which could have occurred by operation of law, which transfers frequently have been held not to violate the Act.

No general principle of law permits an assignee, such as Mr. Centers, to bring suit against the United States in the absence of privity of contract and the Anti-Assignment Act prohibits the transfer here. Because Mr. Centers has not alleged and cannot allege facts to establish the existence of a contract between him the United States, this Court should dismiss this action for lacks of jurisdiction. Southern California Federal Sav. & Loan Ass'n v. United States, 422 F.3d 1319 (Fed. Cir. 2005 ).

## II. Mr. Centers' Claim Is Barred By The Statute of Limitations, 28 U.S.C. § 2501

As to the application of the statute of limitations, this case turns upon the regulations that govern HUD contracts of insurance, upon two different elections made by Mr. Centers, and upon the established interpretation of 28 U.S.C. § 2501.

In our opening brief, we discussed the applicable regulations that constitute the applicable contract of insurance. Mr. Centers correctly refrains from suggesting any provision that might be read to suggest that he could submit what he characterizes as a "supplemental/amended claim" years after the payment of a claim. Section 207.258 here specifically

requires that all documents, sums, and rights relating to the mortgagee's claim be delivered to HUD within 30 days of the electronic notification election of the assignment. These documents, sums, and rights include any undrawn balance under a letter of credit. 24 C.F.R. § 207.258(b)(5)(iv).[1] Mr. Centers does not allege that his alleged “supplemental/amended claim” complied with the regulatory requirements for submission of a claim and offers no factual or legal basis for the Court to ignore his omission.

As President of Centennial, Mr. Centers elected to draw on the letter of credit. If he had not drawn on the letter of credit, but rather had transferred the letter to HUD when the mortgage was assigned, he would have gotten exactly what he did get from of HUD, but would have had no lawsuit from Mr. Blumenfeld and no resulting judgment against Centennial. The second election was his decision, made as President of Centennial, to contest Mr. Blumenfeld's lawsuit, instead of paying Blumenfeld and suing for the money that HUD had denied him. While, as a matter of law, no basis is apparent for any liability by the Government for this money,

[1] No provision in section 207.258 provides for holding the account open until outside events are resolved, or for any later amendments or adjustments. Instead, section 207.258 gives mortgagees various options that they can exercise in order to meet specific issues or exigencies

Centennial could have sued for damages in the Court of Federal Claims within six years of HUD's denial without any time bar. Instead, he made the wrong election on each occasion.

The authorities upon which Mr. Centers relies as establishing that his present claim is not time barred do not support his argument. Upon examination, Oceanic Steamship Co. v. United States, 165 Ct. Cl. 217, 225 (1963), turns upon the existence of a contract provisions that the Government would be liable upon the completion of a "final accounting." Logically, the court held that plaintiff's claim did not accrue until that final accounting. As discussed above, Mr. Centers points to no such contractual provision here.

Nor does Terteling v. United States, 167 Ct. Cl. 331, 334 F.2d 250 (1964), upon which Mr. Centers relies, suggest that the claim here is timely. In Terteling, the Government contracted to provide access to gravel pits free of cost; instead, the contractor was required to pay for that access through litigation and litigation expenses. Relying upon the principle that plaintiffs cannot split causes of action, the court held that plaintiff's claim did not accrue until the Government's warranty was breached when the suit

against plaintiff was filed, and that the statute of limitations did not begin to run until the lawsuit was final to permit calculation of the cost incurred. In contrast, here Mr. Centers asserts his right to split his cause of action by asserting a new claim to avoid the bar of section 2501.

The terms of the contract provided that HUD would pay the sums and take the actions that are provided for in section 207.258 upon the mortgagee taking the actions that are provided in the regulations, including that section, in a timely manner. Section 207.258 provides that the mortgagees have to meet specific time deadlines and makes no provision for compensation for events occurring after those deadlines. HUD did everything it was required to do under 207.258 at the time it issued its accounting and made payment.

Any claim Centennial had against the United States under the terms of the contract as set forth in section 207.258 thus accrued on December 6, 1993, when HUD paid Centennial only $1,851,095.11 of the $2,158,197.72 that Centennial sought under its contract of insurance, and expressly rejected its claim for the amount at issue in this lawsuit. Nothing in the contract between HUD and Centennial required or requires HUD to take any action after that date. Accordingly, the statute of limitations ran and

barred this claim no later than December 6, 1999, five and one half years before Mr. Centers brought this case.

## CONCLUSION

For the reasons set forth in our moving brief and above, this action should be dismissed for lack of jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN,
Assistant Director

Of Counsel;
William Lane
Department of Housing
and Urban Development

/s/John S. Groat
JOHN S. GROAT

Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 514-4325/616-8260
Fax: (202) 514-7965
jack.groat@usdoj.gov

March 2, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on March 2, 2006, a copy of foregoing DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/ s/John S. Groat

Copies provided to --

The Chambers of Judge C. Miller (ADR Judge)

______________